Opinion issued December 14, 2006


 











In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00052-CV

NO. 01-06-00092-CV






DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, Appellant


V.


ALTERNATIVES IN MOTION, Appellee






On Appeal from the 300th District Court

Brazoria County, Texas

Trial Court Cause No. 31072






IN RE DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES,
Relator






Original Proceeding on Petition for Writ of Mandamus






O P I N I O N


 In this termination of parental rights appeal and original proceeding, appellant,
the Department of Family and Protective Services (DFPS), challenges an order
granting summary judgment in favor of appellee, Alternatives in Motion (AIM). In
the appeal, appellate cause number 01-06-00092-CV, DFPS raises the following
issues: (1) whether parents have a right to designate a party other than DFPS as the
managing conservator of minor children by an affidavit of voluntary relinquishment,
without the consent of DFPS, following DFPS's removal of the parents' children; (2)
whether AIM, the licensed child-placing agency to which the parents relinquished the
children, has standing to intervene in a suit filed by DFPS pursuant to chapters 262
and 263 of the Texas Family Code; (1) (3) whether a child's best interest overrides a
conservatorship designation in a relinquishment affidavit; (4) whether AIM
established its right to summary judgment; and (5) whether section 161.207 of the
Family Code overrides the right of the parties to a jury trial on conservatorship. (2) 
DFPS also raises issues one and five in its original proceeding, appellate cause
number 01-06-00052-CV. 

 In the original proceeding, we deny the relief requested in the petition for writ
of mandamus. 

 In the appeal, we reverse and remand the cause.

Background


 On October 24, 2004, following a week-long psychotic episode, Dawn Rachille
Mock (Mock) was found lying in a ditch expressing her desire to sacrifice herself and
her male child to God. On October 25, 2004, DFPS took possession of Mock's and
Robert Lee Brown's (Brown) children, B.L.B. and J.M.B. (the children), because of
neglect at home and Mock's hearing voices telling her to kill the children. The
following day, DFPS filed an original petition for conservatorship in a suit affecting
the parent-child relationship (SAPCR), seeking to terminate the parental rights of
Mock and Brown and to be named the sole managing conservator of the children. 
The trial court ordered that the children be placed in the temporary managing
conservatorship of DFPS and ordered that the parents "are temporarily restrained and
enjoined from disturbing, removing, or taking possession of the children . . . ." On
October 26, 2004, Mock was involuntarily committed for psychiatric treatment at
Austin State Hospital. The court appointed a guardian ad litem and an attorney for
Mock at some point before November 2, 2004. 

 On November 2, 2004, the trial court made additional temporary orders. It
appointed Brazoria County Children's Protective Services (hereinafter referred to as
DFPS) as temporary managing conservator and appointed Mock and Brown as
temporary possessory conservators of the children. Mock was discharged from
Austin State Hospital in late December 2004. 

 On January 5, 2005, both parents signed "Affidavit[s] for Voluntary
Relinquishment of Parental Rights" in favor of AIM, a licensed child-placing agency. 
On January 7, 2005, AIM intervened in the SAPCR filed by DFPS by filing a petition
in intervention for conservatorship and termination of the parent-child relationship. 
As a basis for its request for conservatorship over the children, AIM attached the
voluntary relinquishment affidavits from both Mock and Brown, both of which
designated AIM as managing conservator. On January 18, 2005, Mock filed a
revocation of her affidavit relinquishing the children to AIM on the ground that she
was "not capable of knowingly and willingly executing" it, as she had "recently been
under psychiatric care and treatment." Mock also averred that she was "misled by the
Intervenor and was coerced into signing the affidavit as the result of
misrepresentations by the Intervenor, i.e., AIM." Three days later, the trial court
granted AIM's motion to dismiss its suit for conservatorship and termination of
Mock's and Brown's parental rights. 

 On July 21, 2005, AIM again intervened in the termination and conservatorship
proceedings, on the basis of a second set of affidavits of voluntary relinquishment
executed by Mock and Brown on July 18. It filed a SAPCR against the State of Texas
alleging the same grounds as in its previous intervention. On August 2, 2005, DFPS
filed a motion to strike AIM's petition in intervention on the ground that AIM did not
have standing to proceed against the State. On September 7, 2005, the trial court
denied DFPS's motion. DFPS requested a jury trial on October 25, 2005. 

 On November 21, 2005, AIM moved for summary judgment, seeking
termination of the parent-child relationship as to Mock and Brown and seeking to be
appointed managing conservator of the children. After a hearing, the trial court
entered a final summary judgment on January 3, 2006, terminating the parent's rights
and naming AIM as the permanent managing conservator of the children. DFPS
appeals from this judgment. (3) In addition to the appeal, DFPS filed a petition for writ
of mandamus, a writ of prohibition, and an emergency motion for temporary relief,
asking this Court to suspend enforcement of the trial court's judgment giving AIM
possession of the children. On January 19, 2006, we granted DFPS's motion for
temporary relief.

Summary JudgmentStandard of Review

 Under the traditional standard for summary judgment, the movant has the
burden to show that no genuine issue of material fact exists and that judgment should
be granted as a matter of law. Tex. R. Civ. P. 166a(c); KPMG Peat Marwick v.
Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999). To the extent
the issue presented in this appeal involves statutory construction and the application
of a statute to undisputed facts, we determine the issues as a matter of law. Gramercy
Ins. Co. v. Auction Fin. Program, Inc., 52 S.W.3d 360, 363 (Tex. App.--Dallas 2001,
pet. denied) (citing McCreight v. City of Cleburne, 940 S.W.2d 285, 288 (Tex.
App.--Waco 1997, writ denied)).

Standing of Party Designated in Affidavit of Relinquishment of Parental
Rights to Intervene in Termination and Conservatorship Proceedings


 In its first issue on appeal, DFPS argues that after the trial court appointed it
as the temporary managing conservator of the children the parents could not appoint
a managing conservator via an affidavit of relinquishment. DFPS relies on the trial
court's temporary orders that restricted the rights of the parents. Specifically, the
parents no longer had the right to "represent the children in legal action and to make
other decisions of substantial legal significance concerning the children." Tex. Fam.
Code Ann. § 153.371(8) (Vernon Supp. 2006). In its second issue, DFPS challenges
AIM's standing to intervene on the basis of the parents' affidavits of relinquishment
in DFPS's suit for termination of parental rights and SAPCR. Because these issues
both go to AIM's standing to intervene in the lawsuit, we consider them together.

 Standing is a component of subject matter jurisdiction and is a constitutional
prerequisite to maintaining a lawsuit under Texas law. Tex. Ass'n of Bus. v. Texas Air
Control Bd., 852 S.W.2d 440, 443-44 (Tex. 1993); In the Interest of SSJ-J, 153
S.W.3d 132, 134 (Tex. App.--San Antonio 2004, no pet.) (standing is necessary
prerequisite to trial court's exercise of subject matter jurisdiction in SAPCR seeking
managing conservatorship). Thus, AIM's standing to maintain its claims is a
threshold issue. See In the Interest of Pringle, 862 S.W.2d 722, 724 (Tex.
App.--Tyler 1993, no writ); In the Interest of SSJ-J, 153 S.W.3d at 134. The burden
of proof on the issue of standing to initiate a SAPCR seeking managing
conservatorship is on the petitioner. Pringle, 862 S.W.2d at 725. The petitioner must
prove its standing by a preponderance of the evidence. Id. The standard of review
applicable to subject matter jurisdiction also applies to standing. Texas Ass'n of Bus.,
852 S.W.2d at 446. Under this standard, the pleader must allege facts affirmatively
demonstrating the court's jurisdiction to hear the case. Id. On appellate review, we
construe the pleadings in favor of the plaintiff and look to the pleader's intent. Id. 
A party's standing to pursue a cause of action is a question of law. Coons-Andersen
v. Andersen, 104 S.W.3d 630, 634 (Tex. App.--Dallas 2003, no pet.). 

 Section 102.003 of the Family Code sets out the general standing requirements
for filing a SAPCR. See Tex. Fam. Code Ann. § 102.003. Section 102.003(a)(7)
states that an original SAPCR may be filed at any time by "a licensed child placing
agency." Tex. Fam. Code Ann. § 102.003(a)(7) (Vernon Supp. 2006). Subsection
(a)(10) states that an original suit may be filed at any time by "a person designated as
the managing conservator in a revoked or unrevoked affidavit of relinquishment
under Chapter 161 or to whom consent to adoption has been given in writing under
Chapter 162." Id. § 102.003(a)(10) (Vernon Supp. 2006). 

 It is undisputed that AIM is a licensed child-placing agency. However, to
maintain a SAPCR, a party must show not only that it has general standing but that
it has a justiciable interest in the matter before the court. Mendez v. Brewer, 626
S.W.2d 498, 499 (Tex. 1982). Once a motion to strike has been filed, the burden
shifts to the intervenor to show a justiciable interest in the lawsuit. Jabri v. Alsayyed,
145 S.W.3d 660, 671-72 (Tex. App.--Houston [14th Dist.] 2004, no pet.); Mendez,
626 S.W.2d at 499. A party has a justiciable interest in a suit, and thus a right to
intervene, when its interests will be affected by the litigation. Jabri, 145 S.W.3d at
671-72; Law Offices of Windle Turley, P.C. v. Ghiasinejad, 109 S.W.3d 68, 71 (Tex.
App.--Fort Worth 2003, no pet.).

 AIM relies upon the affidavits of relinquishment filed by Mock and Brown to
establish its justiciable interest in the instant litigation. DFPS contends that neither
parent had the legal right to sign an affidavit of relinquishment designating AIM as
the managing conservator of the children on July 18, 2005, because DFPS had already
been named managing conservator by the trial court with the right to represent the
children in legal actions and to make other decisions of substantial legal significance
concerning the children. Thus, DFPS argues that the affidavits of relinquishment are
invalid and will not support the trial court's implied finding in support of its judgment
that AIM has a justiciable interest in this suit. (4)

 The right to relinquish parental rights voluntarily and to designate a managing
conservator is given exclusively to parents pursuant to sections 153.374 and 161.103
of the Family Code. See Tex. Fam. Code Ann. § 153.374 (Vernon 2002), § 161.103
(Vernon Supp. 2006). Section 153.374 states that:

 (a) A parent may designate a competent person, authorized
agency, or licensed child-placing agency to serve as
managing conservator of the child in an unrevoked or
irrevocable affidavit of relinquishment of parental rights
executed as provided by Chapter 161.

 

 (b) The person or agency designated to serve as managing
conservator shall be appointed managing conservator
unless the court finds that the appointment would not be in
the best interest of the child.


Tex. Fam. Code Ann. § 153.374(a), (b) (Vernon 2002). Section 161.103 states that
an affidavit of voluntary relinquishment of parental rights must contain, among other
things:

 (12) the designation of a prospective adoptive parent, the
Department of Protective and Regulatory Services, if the
department has consented in writing to the designation, or
a licensed child-placing agency to serve as managing
conservator of the child and the address of the person or
agency.


Tex. Fam. Code Ann. § 161.103(b)(12) (Vernon Supp. 2006). Section 161.104
provides that "a person, licensed child-placing agency, or authorized agency
designated managing conservator of a child in an irrevocable or unrevoked affidavit
of relinquishment has a right to possession of the child superior to the right of the
person executing the affidavit" and the rights and duties of a possessory conservator
"until such time as those rights and duties are modified or terminated by court order." 
Tex. Fam. Code Ann. § 161.104 (Vernon 2002).

 Independently, section 105.001 of the Family Code allows a trial court to make
a temporary order for the conservatorship of children for their safety and welfare. 
Tex. Fam. Code Ann. § 105.001 (Vernon Supp. 2006). Thus, here, on October 26,
2004, before the parents signed affidavits of relinquishment, the trial court ordered
that DFPS serve as the temporary conservator of the children until further orders of
the court. The order also provided that "[DFPS] is authorized to consent to such
medical, surgical, or psychological care as may be required by the children." The
court's order further stated that the parents were "temporarily restrained and enjoined
from disturbing, removing, or taking possession of the children." 

 On November 2, 2004, the trial court entered additional orders that DFPS has
the "rights, privileges, duties and powers as set forth in Section 153.371 of the Texas
Family Code . . . ." The court gave DFPS "the right to represent the children in legal
action and to make other decisions of substantial legal significance concerning the
children." Tex. Fam. Code Ann. § 153.371(8) (Vernon Supp. 2006). The trial court
further ordered that the parents were to be temporary possessory conservators with
the rights, privileges, duties and powers of possessory conservators set forth in
section 153.074 of the Code. See Tex. Fam. Code Ann. § 153.074 (Vernon Supp.
2006). (5) Such temporary orders are valid and enforceable until properly superseded
by a court with jurisdiction to do so. Tex. Fam. Code Ann. § 262.204 (Vernon
2002). Thus, this case requires us to determine whether a trial court's temporary
orders can preclude a parent from voluntarily relinquishing parental rights and
designating a managing conservator pursuant to section 153.374 when DFPS has
brought suit to terminate the parents' parental rights. Because the Family Code does
not address this situation, we analyze the issue under the proper rules of statutory
interpretation. 

 Statutory interpretation is a question of law. In re Canales, 52 S.W.3d 698,
701 (Tex. 2001). Our primary goal is to ascertain and effectuate the legislature's
intent. Albertson's, Inc. v. Sinclair, 984 S.W.2d 958, 960 (Tex. 1999). In doing so,
we begin with the statute's plain language because we assume that the legislature
tried to say what it meant and, thus, that its words are the surest guide to its intent. 
Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864, 865-66 (Tex.
1999). To ascertain legislative intent, however, we must look to the statute as a
whole and not to its isolated provisions. Morrison v. Chan, 699 S.W.2d 205, 208
(Tex. 1985); Tex. Dep't of Banking v. Mount Olivet Cemetery Ass'n, 27 S.W.3d 276,
283 (Tex. App.--Austin 2000, pet. denied). In ascertaining legislative intent, we do
not confine our review to isolated statutory words, phrases, or clauses, but we instead
examine the entire act. Meritor Auto., Inc. v. Ruan Leasing Co., 44 S.W.3d 86, 90
(Tex. 2001). We may also consider, among other things, the statute's objectives;
common law, former law, and similar provisions; and the consequences of the
statutory construction. Tex. Gov't Code Ann. § 311.023(1)-(7) (Vernon 1998);
Canales, 52 S.W.3d at 702.

 It is a well-settled rule of statutory construction that every word of a statute
must be presumed to have been used for a purpose. In re Bell, 91 S.W.3d 784, 790
(Tex. 2002) (quoting Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex.
1981)). Likewise, every word excluded from a statute must also be presumed to have
been excluded for a purpose. Id. This rule complements another general statutory
construction principle that courts should not insert words into a statute except to give
effect to clear legislative intent. Id. (citing Laidlaw Waste Sys., Inc. v. City of Wilmer,
904 S.W.2d 656, 659 (Tex. 1995)). A court of appeals should presume the legislature
intended a just and reasonable result in enacting a statute. In re D.R.L.M., 84 S.W.3d
281, 290 (Tex. App.--Fort Worth 2002, pet. denied). It should not construe a statute
in a manner that will lead to a foolish or absurd result when another alternative is
available. Id.

 We observe, first, that neither section 153.374 nor section 161.103 of the
Family Code places any temporal restriction on the right of parents to relinquish their
parental rights voluntarily and to designate a managing conservator. Moreover,
although no Texas case appears to have analyzed the issue of whether a parent who
has lost managing conservatorship of a child can subsequently sign an affidavit of
relinquishment designating a managing conservator, we have found several cases in
which such an affidavit was signed after the parents had lost managing
conservatorship, thereby implying that parents do retain the right to sign an affidavit
of relinquishment. See Wall v. Texas Dept. of Family and Protective Servs., 173
S.W.3d 178, 181 (Tex. App.--Austin 2005, no pet.); In re J.R.P., 55 S.W.3d 147, 149
(Tex. App.--Corpus Christi 2001, pet. denied). Here, at the time that the parents
executed the affidavits of voluntary relinquishment, the trial court had only taken
away their rights as managing conservators. The parents still retained possessory
conservator rights. 

 In light of the Family Code's clear intent to give parents the right to designate
a managing conservator for their children upon voluntarily relinquishing their
parental rights and the absence of any temporal restriction on this right, we conclude
that the right survives a trial court's temporary orders naming DFPS managing
conservator in a suit brought by the State to terminate parental rights. Here, however,
the parents had been removed as managing conservators pending a hearing on
involuntary termination of their parental rights. Thus, their affidavits that designated
AIM as managing conservator served only to transfer those rights the parents still
possessed--in this instance, only possessory rights. When a valid affidavit of
relinquishment designates a licensed child-placement agency as managing
conservator of a child, the agency automatically has a statutory right of possession
superior to the person who signed the affidavit and the rights and duties of a
possessory conservator until modified by the court. See Tex. Fam. Code Ann.
§ 161.104. Therefore, we hold that upon the execution of Brown's and Mock's
affidavits that designated AIM as managing conservators of B.L.B. and J.M.B., AIM
assumed the rights and duties of a possessory conservator of B.L.B. and J.M.B. with
rights superior to Mock's and Brown's until such time as AIM's rights and duties
were modified by court order. See id. We further hold that AIM established its right
to intervene in the SAPCR to seek termination of Mock's and Brown's parental rights
and appointment as managing conservator of B.L.B. and J.M.B by virtue of the
affidavits of relinquishment. See Tex. Fam. Code Ann. § 102.003(a)(10).

 We overrule DFPS's first and second issues on appeal.

Appointment of Managing Conservator in Suit for Conservatorship of a
Child


 In its third issue on appeal, DFPS contends that, in the court's appointment of
a managing conservator, the children's best interest controls over a conservatorship
designation in a relinquishment affidavit, and, in its fourth issue on appeal, DFPS
argues that AIM was not entitled to summary judgment because "[AIM] did not
present any evidence that its appointment as managing conservator was in the
children's best interest." 

 DFPS relies on section 153.374(b) of the Family Code, which provides that a
parent may designate a competent person, authorized agency or licensed child-placing
agency to serve as managing conservator of a child in an unrevoked or irrevocable
affidavit of relinquishment and that "[t]he person or agency designated to serve as
managing conservator shall be appointed managing conservator unless the court finds
that the appointment would not be in the best interest of the child." Tex. Fam. Code
Ann. § 153.374. DFPS also relies on section 153.002 of the Family Code, which
states, "The best interest of the child shall always be the primary consideration of the
court in determining the issues of conservatorship and possession of and access to the
child." Tex. Fam. Code Ann. § 153.002; see also In re K.R.P., 80 S.W.3d 669, 674
(Tex. App.--Houston [1st Dist.] 2002, pet. denied); In the Interest of D.R.L.M., 84
S.W.3d 281, 300 (Tex. App.--Fort Worth 2002, pet. denied). Chapter 153 of the
Family Code governs SAPCR's affecting conservatorship, possession, and access to
a child. 

 AIM relies on Section 161.207 of the Family Code as authority for its position
that the court must automatically appoint it managing conservator in order to carry
out the wishes of the parents whose rights were voluntarily terminated. Section
161.207 provides in pertinent part,

 (a) If the court terminates the parent-child relationship with respect to
both parents or to the only living parent, the court shall appoint a
suitable, competent adult, the Department of Protective and Regulatory
Services, a licensed child-placing agency, or an authorized agency as
managing conservator of the child. An agency designated managing
conservator in an unrevoked or irrevocable affidavit of relinquishment
shall be appointed managing conservator.


Tex. Fam. Code Ann. § 161.207(a) (Vernon 2002) (emphasis added). Section
161.207 makes no reference to the best interest of the child or children for whom the
managing conservator is appointed. See id. However, section 161.207 does not
govern conservatorship, possession, or access to a child, but termination proceedings. 

 We disagree with AIM's argument that because the parents designated it as
managing conservator in their affidavits of relinquishment of parental rights under
Chapter 161 of the Family Code, the trial court was required automatically to name
AIM as managing conservator in the SAPCR under Chapter 153 of the Family Code
without inquiry into the best interest of the children. Section 153.374 governs
appointment of a managing conservator in matters of "conservatorship, possession,
and access," which is the title and subject matter of Chapter 153. Section 153.374
clearly provides that in appointing a managing conservator in such cases, the trial
court need not comply with the parent's designation of a managing conservator if the
designation is not in the children's best interest. See Tex. Fam. Code Ann. §
153.374(b). 

 The overriding policy of Chapter 153 is the best interest of the child. See Tex.
Fam. Code Ann. § 153.002; Meritor Auto., Inc. v. Ruan Leasing Co., 44 S.W.3d 86,
90 (Tex. 2001); Tex. Gov't Code Ann. § 311.023(1)-(7) (Vernon 1998); Canales,
52 S.W.3d at 702. Two statutes express this policy; first, section 153.002 expressly
states that the best interest of the child is the overriding concern for the courts. See
Tex. Fam. Code Ann. § 153.002. Second, section 153.374 states that "the trial court
shall appoint the designated person or licensed child placing agency in an affidavit
of relinquishment unless the appointment of such person is not in the best interest of
the child." See Tex. Fam. Code Ann. § 153.374 (emphasis added). Because the best
interest of the child must be considered, we conclude that while appointment of a
party designated in an affidavit of relinquishment in place of the parent whose rights
are voluntarily terminated is automatic for the purpose of termination proceedings,
appointment of that party as managing conservator in a suit to determine
conservatorship of the child is subject to proof that the appointment is in the child's
best interest. (6) See In the Interest of D.R.L.M., 84 S.W.3d at 300 ("The statute
nowhere requires the trial court to abide by the parent's choice of a managing
conservator expressed in the relinquishment affidavit."). 

 In determining that the appointment of a party as managing conservator is in
the best interest of a child in a termination of parental rights case where, as here, the
children are in the custody of DFPS, the court must consider not only the factors set
out by the supreme court in Holley v. Adams, 544 S.W.2d 367 (Tex. 1976), but also
the factors set out in section 263.307 of the Family Code. See Tex. Fam. Code Ann.
§ 263.307 (Vernon 2002) (listing "factors in determining best interest of child" in
review of placement of children under care of DFPS); Corrales v. DFPS, 155 S.W.3d
478, 489-90 (Tex. App.--El Paso 2004, no pet.) (listing Holley factors and observing
that "[I]n 1993 the Legislature codified Holley, [in section 263.307] incorporating
additional factors for the court to consider when reviewing placement of children
under care of [TDFPS]"); In the Interest of J.R.P., M.C., and R.P, Jr., 55 S.W.3d 147,
151-52 (Tex. App.--Corpus Christi 2001, pet. denied). 

 At the summary judgment hearing, Mock's guardian ad litem expressed the
viewpoint that Mock's parental rights should be terminated and stated, "I have never
seen one bit of proof that there's a problem with this agency." Likewise, Mock's
attorney reported that Mock knew the people at AIM and "would like the children to
be placed with them." However, the trial court heard no evidence regarding the best
interest of the children, under any of the Holley factors or the factors listed in section
263.307. Accordingly, we conclude that the trial court improperly granted AIM's
motion for summary judgment.

 We sustain DFPS's fourth issue on appeal. (7)

 Because we resolve DFPS's fourth issue on appeal in its favor, it is not
necessary for us to reach the merits of its fifth issue on appeal, whether section
161.207 of the Family Code overrides the right of the parties to a jury trial on
conservatorship. See Tex. R. App. P. 47.1.

 Conclusion


 We reverse the judgment of the trial court and remand the cause for further
proceedings in accordance with this opinion. We withdraw our January 19, 2006
order that suspended enforcement of the judgment of the trial court.




 Evelyn V. Keyes

 Justice


Panel consists of Justices Nuchia, Keyes, and Hanks.

1. Chapter 262 of the Family Code governs "Procedures in Suit by Governmental Entity
to Protect Health and Safety of Child." Chapter 263 of the Family Code governs
"Review of Placement of Children Under Care of Department of Protective and
Regulatory Services."
2. Section 161.207 of the Family Code governs the "Appointment of Managing
Conservator on Termination." See Tex. Fam. Code Ann. § 161.207 (Vernon 2002).
3. Neither of the parties complains about the part of the trial court's judgment that
terminated the rights of the parents.
4. DFPS contended in its motion to strike, in its response to AIM's motion for summary
judgment, and in its subsequent plea to the jurisdiction that Mock's affidavit was
obtained by coercion and without notice either to the ad litem or to the attorney
appointed by the court to represent Mock's interests and that it was, therefore, invalid
and did not support AIM's intervention. DFPS does not make these arguments on
appeal.
5. The parents were given the following rights:

 

 (1) the duty of care, control, protection, and reasonable discipline of the
children during periods of possession.

 

 (2) the duty to support the children including providing the children with
clothing, food, shelter, and medical and dental care not involving an
invasive procedure during periods of possession;

 

 (3) the right to consent for the children to medical and dental care not
involving an invasive procedure during periods of possession;

 

 (4) the right to consent for the children to medical, dental, and surgical
treatment during an emergency involving immediate danger to the
health and safety of the children during periods of possession; and

 

 (5) the right to direct the moral and religious training of the children during
periods of possession. 
6. Although the issue is not dispositive, we sustain DFPS's third issue on appeal--that
an affidavit of voluntary relinquishment and designation of managing conservator can
be overridden by the best interest of the children. See Tex. Fam. Code Ann. §
153.374(b); In the Interest of D.R.L.M., 84 S.W.3d 281, 300 (Tex. App.--Fort Worth
2002, pet. denied).
7. In its original proceeding, DFPS raises two issues that are substantially similar to the
issues raised in its appeal. Because DFPS has an adequate remedy by appeal, we
conclude that DFPS is not entitled to proceed with its petition for writ of mandamus. 
Accordingly, we deny DFPS's petition for writ of mandamus. See Tex. R. App. P.
52.8(a). DFPS's writ of prohibition is likewise denied. See id.