**Affirmed and Opinion filed August 21, 2012.**



**In The**

# Fourteenth Court of Appeals

_____

**NO. 14-10-01188-CV**

_____

**K.J. AND V.J. INDIVIDUALLY AND AS NEXT FRIEND OF E.J., Appellants,**

**V.**

**USA WATER POLO, INC., CHRIS CULLEN, JASON PUYEAR, W.G., JR. AS NEXT FRIEND OF W.G., III, K.G. AND L.G. AS NEXT FRIENDS OF T.G., M.K. AND L.K. AS NEXT FRIENDS OF K.K., B.R. AND B.R. AS NEXT FRIENDS OF B.R., W.S. AS NEXT FRIEND OF P.S. AND J.S., Appellees.**

**On Appeal from the 80th District Court**
**Harris County**
**Trial Court Cause No. 2008-49120**

## OPINION

In this appeal from the trial court's judgment on a jury verdict against the plaintiffs on civil assault and other claims, appellants K.J. and V.J., individually and as next friends of E.J., raise eleven issues. In their third issue, appellants contend the jury disregarded conclusive evidence that an assault occurred and therefore judgment should be rendered in their favor on that claim. In their remaining issues, appellants seek a remand on the rest of

the case, contending that the trial court erred or abused its discretion by failing to record bench conferences, refusing to allow appellants to ask the jury panel about their ability to award large damages, failing to abate the case when notice of a Deceptive Trade Practices Act (DTPA) claim was not given, granting special exceptions on a pleading that had been amended, imposing sanctions, limiting appellants' questioning of witnesses, and preventing them from making objections on the record. Lastly, appellants contend the cumulative effect of the trial court's errors denied them a fair trial in violation of their due-process rights. We affirm.

I

In August 2008, appellants, on behalf of their minor son, E.J., sued USA Water Polo, Inc. (USAWP), the national governing body for the sport of water polo. Appellants also sued numerous other defendants, including two coaches and several next friends of minor boys who, like E.J., participated in water polo activities as members of entities affiliated with USAWP. Appellants alleged that, while in Salt Lake City, Utah, for a USAWP-sanctioned water polo tournament, the boys participated in sexually assaulting E.J. as part of a team initiation. Appellants also alleged that the coaches and chaperones took no action to prevent the team members from "hazing and assaulting" E.J. After amending their petition several times and dropping claims against some defendants, appellants asserted claims including assault and battery, negligence, fraud, and DTPA violations against the defendants.

The trial witnesses' accounts of the alleged assault differed. E.J. testified that on Memorial Day weekend in May 2008, he was part of a team that traveled to Utah to compete in a water-polo tournament. The boys and the coaches stayed at the same hotel. According to E.J., some of his teammates, including B.R, W.G., N.K., K.K., T.G., and P.S, subjected him to an initiation or hazing without his consent. E.J. testified that the boys forced him to go to B.R.'s room, where they blindfolded him with a towel and placed a trash can over his head. As E.J. screamed, the boys pinned him down and spanked him with

2

a belt. Next, the boys pulled E.J.'s pants down and gave him a "wedgie." They then assaulted him by sticking something into his anus which he "believed" was fingers. T.G. then handed E.J. an ice cube that he claimed he had put down his pants and told E.J. to put the ice cube in his mouth. E.J. went in the bathroom and one or more of the boys came in after him with an iron and used it to squirt water at him. The next day, during the trip home, T.G. told E.J. that B.R. had said he stuck four fingers into E.J.'s anus, and T.G. held up his fingers to demonstrate.

B.R. acknowledged that he gave E.J. a "wedgie," but he denied putting his fingers in E.J.'s anus or telling anyone he had done so. T.G. also denied telling E.J. that B.R. said he had inserted his fingers into E.J.'s anus. All of the other boys who were in the hotel room at the time denied any conduct constituting a sexual assault occurred. The boys' accounts differed concerning the details of the incident, but most acknowledged that E.J. was blindfolded, held down on a bed, given a wedgie, and had his pants pulled down.

The first question in the jury charge asked the jury to determine whether T.G., N.K., or B.R. committed an assault against E.J. If they answered this question "yes" as to B.R., they were then asked to determine whether B.R. committed a sexual assault against E.J. The jury found against E.J. on his claims of assault and sexual assault, and so did not reach additional questions concerning whether other boys assisted or encouraged the acts.[1] The jury also found that USAWP was not negligent and did not violate the DTPA.

The trial court entered a judgment on the jury's verdict, ordering that appellants take nothing from appellees. The court later granted a motion by P.S.'s father to modify the final judgment to incorporate sanctions for frivolous pleadings and claims against E.J.'s mother, V.J., awarding $4,125.00 plus post-judgment interest. Appellants filed a motion for new trial, which was denied. This appeal followed.

---

[1] Specifically, if the jury answered Question 1 "yes," the jury was asked consider in Question 2 whether W.G., T.G., K.K., N.K., B.R., and P.S. assisted or encouraged an assault against E.J. If the jury found in Question 3 that B.R. committed a sexual assault against E.J., they were then asked in Question 4 to consider whether W.G., T.G., K.K., N.K., and P.S. assisted or encouraged a sexual assault against E.J.

## II

In their third issue, appellants contend the uncontroverted evidence established that an assault took place, and the jury was not free to disregard it. Appellants ask us to reverse and render judgment that there was an assault and remand for new trial on all other issues.[2]

As an initial matter, appellees contend that appellants have failed to preserve this issue because they did not raise it in the trial court. *See* Tex. R. App. P. 33.1(a). To preserve a complaint of legal insufficiency of the evidence after a jury trial, a party must (1) move for an instructed verdict, (2) move for a judgment notwithstanding the verdict, (3) object to the submission of the jury question, (4) move to disregard the jury finding, or (5) move for a new trial. *See Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex. 1991); *United Parcel Serv., Inc. v. Tasdemiroglu*, 25 S.W.3d 914, 916 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Appellants contend they presented the issue in  a motion for new trial, but the motion for new trial recited only that the jury's verdict was "against the great weight and preponderance of the evidence and is manifestly unjust"—a challenge to the factual sufficiency of the evidence. Moreover, appellants did not request rendition of judgment in their favor; they sought only a new trial. Therefore, we conclude that appellants did not raise a legal-sufficiency challenge in the trial court and thus have not preserved the issue for review. *See Halim v. Ramchandani*, 203 S.W.3d 482, 486–87 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Accordingly, we overrule appellants' third issue.

## III

In their second issue, appellants contend they were precluded from asking the venire panel whether they would be willing to award damages to E.J. of $2 million if the law and the credible evidence justified such an award. Further, because the trial court refused to permit the question, appellants contend they were denied the opportunity to exercise

---

[2] Appellants have not assigned error on appeal as to any alleged factual insufficiency of the evidence to support the jury's finding that appellants did not prove the essential elements of their assault claim.

challenges for cause and peremptory challenges, depriving them of their due-process right to a fair trial.

On the first day of voir dire, the trial court informed the jury that the lawsuit involved allegations of assault and sexual assault against a teenage boy by some of his water-polo teammates at a tournament he was attending in Utah. Later, as appellants' counsel questioned the panel members, he asked the following question, without objection, to the first eighty-one panel members:

> Now, do you have you a fixed figure in mind that no matter what the law is that the Judge gives you and the evidence you hear from the witness stand that you would not go, in your own words? And by that I mean that if the law as given to you by His Honor and the evidence only justified one dollar in damages, would you be willing to serve on this jury and come back with an award one dollar for [E.J.]?

Panel member 82 stated he did not understand the question, and when appellants' counsel repeated it, counsel for USAWP objected that the question was "an improper attempt to pre-commit the jurors to any amount." Appellants' counsel responded that "it was a question of whether they can follow the law." The trial court overruled the objection, but admonished appellants' counsel to "[k]eep it in general terms."

After several more jurors answered the question, appellants' counsel changed the question:

> Let's go the other direction. What if the credible evidence, all the credible evidence and the law [that] is given to you by His Honor justifies an award of $2 million for [E.J.]. Are you willing to sit on this jury and return a verdict of $2 million for [E.J.], juror number 1?

USAWP's counsel began to object, saying, "Once again that's an improper attempt --" when the trial court asked counsel to approach the bench. An unrecorded bench conference was held. After the bench conference, no ruling was requested or announced on the record, but appellants' counsel did not continue that line of questioning. We presume for the sake

of argument that the trial court ruled appellants were precluded from asking the venire panel whether they would be willing to award damages to E.J. of $2 million if the law and the credible evidence justified such an award.

Voir dire examination protects the right to an impartial jury by exposing possible improper juror bias or prejudice. *See Hyundai Motor Co. v. Vasquez,* 189 S.W.3d 743, 749 (Tex. 2006). The primary purpose of voir dire is to inquire about specific views that would prevent or substantially impair jurors from performing their duty in accordance with their instructions and oath. *Id.* A trial judge's refusal to allow certain questions during voir dire is reviewed under an abuse-of-discretion standard. *See id.* at 753–54. A court abuses its discretion when its denial of the right to ask a proper question prevents determination of whether grounds exist to challenge for cause or denies intelligent use of peremptory challenges. *Babcock v. Nw. Mem'l Hosp.,* 767 S.W.2d 705, 709 (Tex. 1989).

A "commitment question" has been defined as "one that commits a prospective juror to resolve, or refrain from resolving, an issue a certain way after learning a particular fact." *Davis v. State*, 313 S.W.3d 317, 346 (Tex. Crim. App. 2010). Questions that are not intended to discover bias against the law or prejudice for or against the defendant, but rather seek only to determine how jurors would respond to the anticipated evidence and commit them to a specific verdict based on that evidence are not proper. *Vasquez*, 189 S.W.3d at 753 (citing *Sanchez v. State*, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005)).[3]

On appeal, appellants contend that the question was a proper inquiry into whether the potential jurors could follow the law given to them by the court and as based on the evidence presented because "it inquired of the venire's ability to return large damages, if all of the credible evidence they heard and the law as given to them by the judge warranted large damages." Appellants argue that the question is analogous to asking venire members

---

[3] The Supreme Court of Texas has explained that, because the statutory standards for bias or prejudice in civil and criminal cases are the same, voir dire standards should remain consistent. *Vasquez*, 189 S.W.3d at 753.

6

in a criminal case whether they can consider the entire range of punishment. *See Cardenas v. State*, 325 S.W.3d 179, 184 (Tex. Crim. App. 2010) (stating that both the State and the defense may question the jury panel on the range of punishment and may commit jurors to consider the entire range of punishment for an offense); *Davis*, 313 S.W.3d at 346 ("When the law requires a certain type of commitment from jurors, such as considering the full range of punishment, an attorney may ask prospective jurors to commit to following the law in that regard.").

We are not persuaded, however, that the analogy is instructive in this case. Appellants' criminal cases reflect that a party may ask potential jurors whether they can consider the full range of punishment because the punishment for a particular offense is prescribed by statute, and a party is entitled to determine whether potential jurors can follow the law on which the parties rely. *See Cardenas*, 325 S.W.3d at184–85; *Standefer v. State*, 59 S.W.3d 177, 181 (Tex. Crim. App. 2001). Thus, when the law requires a certain type of commitment from jurors, the attorneys may ask the prospective jurors whether they can follow the law in that regard. *Standefer*, 59 S.W.3d at 181; *see also In re Commitment of Hill*, 334 S.W.3d 226, 229 (Tex. 2011) (per curiam) (commitment question not improper when the commitment potential jurors were asked to make was legislatively mandated). In civil cases, however, the law does not require a jury to award a statutorily specified amount of damages if liability is found. *See Taber v. Roush*, 316 S.W.3d 139, 164–65 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding that venire member was not disqualified as a matter of law when he indicated that he could not award a million dollars for mental anguish because "[t]he law does not require a juror to award any specific amount of damages for mental anguish."). Thus, we conclude the criminal cases involving commitment questions on the range of punishment are not dispositive in this civil case.

Appellants also contend the question was not a commitment question because it did not tell the venire members any facts and did not ask them to commit to resolve an issue a certain way after learning a particular fact. But appellants' question was framed by a

preview of the claims involved, and inquired whether the jury could commit to a specific amount of damages, namely $2 million, if the law and facts allowed it. On this record, we conclude that the trial court did not abuse its discretion in disallowing the question. "One of the primary rules of voir dire in Texas civil cases has long been that trial courts have broad discretion in conducting it." *Vasquez*, 189 S.W.3d at 753. We also follow the general rule in Texas that "it is improper to ask jurors what their verdict would be if certain facts were proved." *Id.* at 751. "Fair and impartial jurors reach a verdict based on the evidence, and not on bias or prejudice. Voir dire inquiries to jurors should address the latter, not their opinion about the former." *Id.* at 751–52.

In *Vasquez*, the Supreme Court of Texas noted that until the court-of-appeals decision in that case, no Texas appellate court "had held that a trial court abuses its discretion in excluding a voir dire question that incorporates isolated facts in a case." *Id.* at 753. As an example of a court refusing to so hold, the Supreme Court cited *Greenman v. City of Fort Worth*, a case with facts remarkably close to those in the case at hand. *See* 308 S.W.2d 553, 554 (Tex. Civ. App.—Fort Worth 1957, writ ref'd n.r.e.).

Whether appellants' question exactly fits the definition of a commitment question, we hold the trial court did not abuse its discretion in refusing to allow appellants' counsel to ask it. We therefore overrule appellants' second issue.

IV

In their fourth issue, appellants contend that because USAWP filed a plea in abatement after appellants amended their petition to assert DTPA violations, and appellants did not timely respond to it, any actions the trial court took during the abatement period were void. Specifically, appellants allege that the trial court's orders and two depositions taken during the abatement period were "legal nullities." Further, appellants argue that the trial court abused its discretion in admitting excerpts from the two depositions at trial, because as nullities, they amounted to incompetent evidence that will

8

not support a judgment. Appellants contend that the entire case must be reversed and remanded because "[t]here is no way to determine what effect the admission of the legal nullity depositions had on the jury's verdict."

Here, USAWP, the only DTPA defendant, timely filed its plea in abatement on October 27, 2009, about two weeks after appellants amended their petition to add DTPA claims against it. Appellants did not respond. On November 13, 2009, the trial court granted the plea in abatement after an oral hearing, ordering appellants to provide the written notice mandated by section 17.505 within twenty-one days. *See* Tex. Bus. & Com. Code § 17.505(a). The order specified, however, that USAWP agreed to waive abatement if proper written notice was given. Appellants acknowledge that on December 4, 2009, twenty-one days later, they provided the statutory notice.

Shortly after that, appellants filed a motion to set aside the trial court's November 13 order, arguing that the trial court lacked authority to enter the order because the case was automatically abated on November 7, six days earlier. *See* Tex. Bus. & Com. Code § 17.505(d) (providing for automatic abatement without court order beginning on the eleventh day after the date a plea in abatement is filed if not controverted by an affidavit filed by the consumer before the eleventh day after the date on which the plea in abatement is filed). On December 4, 2009, the trial court denied appellants' motion. The trial court's order reflected that, during the November 13 hearing on the plea in abatement, the trial court expressly acknowledged USAWP's waiver of the of the abatement, and "stated that that parties would be allowed to proceed with the scheduled depositions in Frisco, Texas that were set for November 23, 2009."

Section 17.505(a) of the DTPA requires that, as a prerequisite to filing a suit that seeks damages under section 17.50(b)(1) against any person,

> a consumer shall give written notice to the person at least 60 days before filing the suit advising the person in reasonable detail of the consumer's specific complaint and the amount of economic damages, damages for

9

mental anguish, and expenses, including attorneys' fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant.

Tex. Bus. & Com. Code § 17.505(a). The purpose of the notice period is to encourage parties to resolve disputes short of litigation. *Hines v. Hash*, 843 S.W.2d 464, 469 (Tex. 1992). If a plaintiff files an action for damages under the DTPA without first giving the required notice and a defendant timely requests an abatement, the trial court must abate the proceedings if it determines that notice was not provided as required. *See* Tex. Bus. & Com. Code § 17.505(c), (d), (e). A defendant may waive his objection to a lack of notice. *Hines*, 842 S.W.2d at 469.

USAWP, as the only party entitled to seek abatement, also had the right to waive abatement. *See id.* Generally, waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003). A party's express renunciation of a known right can establish waiver. *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996). The trial court's November 13 order reflects that USAWP agreed to waive the abatement if appellants provided the statutorily required written notice, and the appellants complied with that order. Thus, we hold that the trial court did not lack authority to enter the ensuing orders acknowledging USAWP's right to waive the abatement period and refusing to set aside that order.

In their brief, appellants do not mention USAWP's waiver or assert that waiver cannot apply. Instead, appellants rely on the statutory language providing for automatic abatement and this court's opinion in *In re Kimball Hill Homes Tex., Inc.*, 969 S.W.2d 522 (Tex. App.—Houston [14th Dist.] 1998, orig. proceeding). In *Kimball Homes*, the court held that the trial court abused its discretion by failing to abate a case based on the plaintiffs' failure to provide the pre-suit notice required by the Residential Construction Liability Act. *Id.* at 526–27. In explaining the basis for its holding, the court stated: "Abatement of an action not only precludes the trial court from going forward on a case, it

10

prohibits the parties from proceeding in any manner until the case has been reinstated." *Id.* at 527. But *Kimball Homes* is distinguishable because in that case the complaining party was a defendant seeking a statutory abatement right it had been denied, not a plaintiff seeking to benefit from an abatement period triggered in part by the plaintiff's own failure to comply with the requisite notice requirements. *See id.* at 526–27. Further, no party in *Kimball Homes* asserted that the defendant agreed to waive the abatement period. Therefore, *Kimball Homes* is not controlling on these facts. Moreover, this court has recognized that, even during abatement, a trial court maintains the authority to manage its own docket. *See 3V, Inc. v. JTS Enters., Inc.*, 40 S.W.3d 533, 540 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

Even assuming the trial court erred, however, we cannot conclude that the alleged error probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a). Appellants complain that appellees deposed two witnesses, A.N. and R.S., during the abatement period, and used the depositions at trial although the depositions purportedly were legal nullities. Although appellants claim the testimony is incompetent and, for this reason, cannot be considered by this court in reviewing the sufficiency of the evidence, as noted above, appellants failed to preserve error on their legal-sufficiency issue. We overrule appellants' fourth issue.

V

In their fifth issue, appellants contend that the trial court's order granting USAWP's special exceptions to appellants' fifth amended petition was a nullity because appellants filed a sixth amended petition before the trial court signed the order. Thus, appellants argue, the trial court's order sustained exceptions to a pleading that no longer existed. *See CIGNA Ins. Co. v. TPG Store, Inc.*, 894 S.W.2d 431, 434 (Tex. App.—Austin 1995, no writ) (noting that an amended petition supersedes all previous petitions); *Direkly v. ARA Devcon, Inc.*, 866 S.W.2d 652, 655 (Tex. App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.) (same). Further, appellants contend that, during trial, the trial court ordered

11

appellants to re-plead, making "a substantive ruling" on the pleadings, which was an abuse of discretion requiring reversal and remand. Appellants do not explain how the "substantive ruling" may have affected them.

Presuming for the sake of argument that the trial court abused its discretion in this instance, we conclude that any such error did not probably cause the rendition of an improper judgment and did not probably prevent the appellants from properly presenting this case on appeal. *See* Tex. R. App. P. 44.1(a). We therefore overrule appellants' fifth issue.

## VI

In appellants' sixth, seventh, and eighth issues, they complain about the imposition of sanctions in the amount of $4,125.00 in attorney's fees and expenses against V.J., the mother of E.J., in favor of J.S., the father of P.S. Specifically, appellants contend that: (1) when claims against a defendant have been severed from the case that defendant may not file a motion for sanctions after the judgment is entered and have sanctions awarded to him; (2) a trial court abuses its discretion by imposing sanctions against a party without requiring that the attorney responsible for preparing the pleading is also "held to account"; and (3) a trial court abuses its discretion when it does not impose sanctions against a person who intervenes, seeking sanctions, after the final judgment is signed.

## A

To put the issues in context, we outline additional facts relevant to their resolution. Appellants originally sued J.S. individually for negligence, alleging that he was a chaperone on the trip charged with supervising the water-polo team members, including E.J. J.S. denied the allegations and moved for summary judgment. Appellants filed a response supported by an affidavit in which V.J.[4] stated the following:

---

[4] V.J. submitted the affidavit as "Jane Doe," but for consistency we refer to her throughout as V.J.

"It is my belief that [J.S.] went on the trip as a chaperone for the team members. This was based on my prior dealings with Houston Water Polo League activities and trips."

After deposing V.J., J.S. filed a motion for sanctions for frivolous pleadings and claims on March 13, 2009, seeking monetary relief in the form of attorney's fees and expenses under Rule 13 of the Texas Rules of Civil Procedure and Chapter 10 of the Texas Civil Practice and Remedies Code.

In the sanctions motion, J.S. alleged that, even though other parents attended the tournament, appellants and their lawyers singled out J.S. and sued him individually "[w]ithout any factual or legal basis whatsoever." J.S. further claimed that he repeatedly sought a voluntary dismissal from the case, but when that was unsuccessful he filed a motion for summary judgment and was "forced to incur the considerable cost" of attending V.J.'s deposition. According to J.S., V.J. admitted during her deposition that she had no factual evidence to support her "belief" that J.S. was a chaperone on the trip, and she also admitted she had no factual basis to refute J.S.'s evidence that he was not a chaperone.

On June 1, appellants non-suited their claims against J.S. Four days later, before the hearing on J.S.'s motion for summary judgment began, the trial court signed an order dismissing without prejudice appellants' claims against J.S. At some point after non-suiting the claims against J.S., appellants amended their petition to include claims of tortious interference with contract and extortion against J.S. individually and as next friend of P.S. On June 7, 2010, the trial court severed the new claims against J.S. on the co-defendants' motion, which appellants did not oppose. J.S. did not obtain a ruling on his sanctions motion until after the trial court rendered final judgment in the case under review.

Appellants' claims against appellees, USAWP, the coaches, and the minor boys then proceeded to trial. After the jury found in favor of the appellees and the trial court signed a final judgment based on the jury's verdict, J.S. filed a "Motion to Modify Final Judgment to Incorporate Sanctions for Frivolous Pleadings and Claims as Part of Final

13

Judgment." In this motion, he re-urged his request for sanctions against appellants and their attorneys and sought an award of attorney's fees and expenses incurred in his defense.

On November 15, 2010, while still possessed of plenary power in the case under review, the trial court entered an order granting J.S. sanctions against V.J. In its order, the trial court made several findings, including a finding that V.J. signed an affidavit in support of appellants' response to J.S.'s motion for summary judgment that had no evidentiary support and was "filed for improper purposes, including harassment, delay, and causing [J.S.] needless attorney's fees, costs and expense." The trial court also found that appellants' claims based on factual assertions or contentions that J.S. was a team chaperone on the Utah water-polo trip "had no basis in fact" and were "groundless and brought in bad faith or for purposes of harassment." The trial court's order reflects that it made its findings "after taking judicial notice of all pleadings on file in the above-captioned lawsuit, conducting an evidentiary hearing, and hearing argument of counsel," but our appellate record does not include a reporter's record of the hearing. Appellants do not challenge the trial court's findings or the amount of the sanctions.

B

1

Appellants first contend that, because the claims against J.S. were severed on June 7, 2010, J.S. was no longer a defendant and therefore his post-judgment motion was in fact an untimely intervention. *See* Tex. R. Civ. P. 60; *Tex. Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 36 (Tex. 2008) (stating that generally one cannot intervene after final judgment). Therefore, the trial court should have denied the motion.

Although appellants assert that J.S.'s motion for sanctions was not brought before he was initially dismissed from the case or before the severance was ordered, that is not correct. As discussed above, J.S.'s motion for sanctions was first filed on March 13, 2009, before the claims against him were nonsuited. Rule 162 of the Texas Rules of Civil

14

Procedure expressly states, "A dismissal under this rule shall have no effect on any motion for sanctions, attorney's fees or other costs, pending at the time of dismissal, as determined by the court." The trial court's dismissal order did not specifically address J.S.'s pending motion for sanctions or otherwise indicate that the order was intended to be a final order. Accordingly, neither the nonsuit nor the trial court's dismissal order disposed of J.S.'s motion for sanctions. *See* Tex. R. Civ. P. 162; *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 96–97 (Tex. 2009) (per curiam); *Crites v. Collins*, 284 S.W.3d 839, 840–41 (Tex. 2009) (per curiam).

Likewise, the severance order did not address or affect J.S.'s sanctions motion. The order addressed only the severance of appellants' causes of action for alleged tortious interference with contract and extortion asserted against J.S.; therefore, J.S.'s motion for sanctions remained pending before the trial court in this case. *See Mantri v. Bergman*, 153 S.W.3d 715, 718 (Tex. App.—Dallas 2005, pet. denied) (holding that motion for sanctions was not an independent cause of action and should be decided by trial court where frivolous pleading is pending).

Finally, the Texas Supreme Court has expressly approved the practice of moving to modify a judgment to assess fees as sanctions in the same lawsuit as J.S. did here. *See Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 310–12 (Tex. 2000). For these reasons, we overrule appellants' sixth issue.

2

In their seventh issue, appellants contend that the trial court abused its discretion by imposing sanctions against V.J. without requiring that the attorney responsible for preparing the pleading also be "held to account." According to appellants, what V.J. signed was not an affidavit, even though it was denominated as such, because "[w]hat she swore to was her belief, which is not an affidavit." Further, the trial court made no finding as to conduct of V.J.'s earlier counsel "even though the motion for sanctions directly addressed other pleadings, actions, etc., that only the attorneys could have been involved in." We

15

review the trial court's imposition of Rule 13 and Chapter 10 sanctions for an abuse of discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007).

As an initial matter, we reject appellants' contention that the trial court abused its discretion by imposing sanctions on V.J. but not her then-attorneys. Both Rule 13 and Chapter 10 provide that the trial court can award sanctions against the party, the party's attorney, or both. *See* Tex. R. Civ. P. 13 (trial court may impose sanctions for signing a pleading, motion, or other paper in violation of this rule "upon the person who signed it, a represented party, or both"); Tex. Civ. Prac. & Rem. Code § 10.004(a) (providing that court "may impose a sanction on the person, a party represented by the person, or both"). Thus, the trial court possessed the authority and discretion to sanction V.J. instead of her trial counsel because she signed the affidavit on which the summary-judgment response was based. *See Metzger v. Sebek*, 892 S.W.2d 20, 52–53 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (upholding trial court sanctions against party who signed false affidavit in support of response to motion for summary judgment but finding sanction of $994,000 excessive).

We turn next to appellants' contention that V.J.'s affidavit was not really an affidavit because she merely testified to a "belief." Appellants rely on *Campbell v. Fort Worth Bank & Trust* to support this contention. *See* 705 S.W.2d 400, 402 (Tex. App.—Fort Worth 1986, no writ). But *Campbell* is distinguishable. In that case, the affiant only made statements to "the best of [his] knowledge," and the affidavit lacked any recitation that the statements were made on personal knowledge or affirmatively showing how the affiant gained personal knowledge of the facts alleged in the affidavit. *See id.* at 401–02. Here, V.J. signed an affidavit supporting a responsive pleading in an effort to defeat J.S.'s motion for summary judgment, and in it she swore that she had "personal knowledge of all facts which are set forth in the affidavit and they are true and correct." She further explained that she believed J.S. was a chaperone based on her own personal knowledge from her "prior dealings with Houston Water Polo League activities and trips." Merely stating a "belief" or

16

"I believe" does not make an affidavit insufficient if other evidence demonstrates the affiant's personal knowledge. *See Moya v. O'Brien*, 618 S.W.2d 890, 893 (Tex. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.).

Even if the affidavit were incompetent evidence, the trial court still could have found V.J.'s conduct in signing it sanctionable. The trial court could have determined that V.J. signed the affidavit in an improper attempt to defeat J.S.'s motion for summary judgment by seeking to convince the trial court that she had personal knowledge J.S. "went on the trip as a chaperone for the team members." The trial court's order granting sanctions reflects its findings that appellants' response to J.S.'s motion for summary judgment and V.J.'s supporting affidavit were filed for "improper purposes" and that appellants' claims based on factual assertions that J.S. was a team chaperone "had no basis in fact." We reject any assertion by appellants that V.J. should be excused and an award of sanctions reversed merely because her sanctionable conduct may have been poorly executed.

Moreover, because appellants have failed to provide the reporter's record of the evidentiary hearing held on the sanctions motion, we must presume that sufficient evidence was introduced to support the trial court's order. *See Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 795 (Tex. 1987); *see also Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 783 (Tex. 2005) (when proceedings indicate an evidentiary hearing was held, complaining party must present a record of that hearing to establish harmful error). We therefore overrule appellants' seventh issue.

3

Finally, appellants contend the trial court abused its discretion by failing to award them sanctions against J.S.'s counsel "for bringing an intervention after the final judgment." Appellants do not direct us to any place in the record where they brought a request for sanctions to the trial court's attention. We have already explained that J.S.'s motion to modify the final judgment to incorporate sanctions was not an untimely intervention; therefore, we overrule appellants' eighth issue.

17

In their ninth issue, appellants contend the trial court abused its discretion when "throughout the trial" it sustained objections to questions which asked the witness "whether or not" something had occurred on the grounds that the questions were leading. *See H.E. Butt Grocery Co. v. Heaton*, 547 S.W.2d 75, 77 (Tex. Civ. App.—Waco 1977, no writ) ("The mere fact that plaintiff was asked to state 'whether or not' the fact existed did not make this particular question leading."). But appellants direct us to only three examples in the record, and do not discuss the questions or provide any analysis. Presuming for the sake of argument that the trial court abused its discretion in sustaining these objections, we conclude that any such error did not probably cause the rendition of an improper judgment and did not probably prevent the appellants from properly presenting this case on appeal. *See* Tex. R. App. P. 44.1(a). We overrule appellants' ninth issue.

VIII

Appellants frame their tenth issue as follows: "When an attorney asks a question which suggests to the jury the effect of their answer, and the party is denied the opportunity to then state their objection on the record and obtain a ruling, is that party is (sic) impermissibly denied the ability to preserve the appellate record." Appellants contend this issue arose during cross-examination of appellants' expert on attorney's fees.

According to appellants, the question asked by counsel for USAWP impermissibly suggested the effect of the answer to the jury.[5] Appellants requested a bench conference, which was held off the record, and then immediately hand-wrote a motion for mistrial and filed it. After the bench conference, the trial court instructed the jury concerning a party's burden of proof when seeking attorney's fees. Later, appellants were permitted to place their motion for mistrial on the record during a recess in which the issue was argued at

---

[5] Counsel for USAWP asked, "Let me see if I got your testimony boiled down to low gravy for me. From what I've heard you're testifying as to an hourly rate and an amount of fees that pursuant to the fee agreement the plaintiffs in this case will never have to pay. True?" Counsel for USAWP was apparently referring to the fact that appellants had a contingency-fee agreement with their counsel.

length. The trial court then denied the motion for mistrial. Although not entirely clear, appellants appear to contend that the trial court abused its discretion by not allowing them to pursue an adverse ruling on the record immediately after the allegedly improper question was asked. Presuming that the trial court erred in this regard, the trial court later recited on the record that it had overruled appellants' objection at the bench conference, thus reflecting that appellants timely obtained an adverse ruling. Therefore, the trial court did not prevent appellants from preserving error. In addition, despite overruling the objection, the trial court gave the jury a curative instruction after the unrecorded bench conference. Appellants did not prevail on liability and therefore the jury did not even reach the questions regarding damages and attorney's fees. Presuming that the trial court erred in overruling appellants' objection to this question, we conclude that any such error did not probably cause the rendition of an improper judgment and did not probably prevent the appellants from properly presenting this case on appeal. *See* Tex. R. App. P. 44.1(a). We therefore overrule appellants' tenth issue.

IX

In their eleventh issue, appellants contend that reversal and remand is required because "[t]he cumulative errors demonstrated herein show that Appellants were denied a fair trial." Beyond a single citation to *In re Murchison*, 349 U.S. 133, 136 (1955), for the maxim that a fair trial is a basic requirement of due process, appellants have failed to provide argument, analysis, citations to the record, or legal authority to support this issue. By failing to brief this issue, appellants have waived it. *See Neely v. Comm'n for Lawyer Discipline*, 302 S.W.3d 331, 351 (Tex. App.—Houston [14th Dist.] 2009, pet. denied.).

X

Lastly, in their first issue, appellants contend that reversal and remand is required because they were deprived of a complete record of the proceedings through no fault of their own. Appellants point out that some bench conferences were not recorded even though Texas Rule of Appellate Procedure 13.1 requires a court reporter, unless excused

by agreement of the parties, to "attend court sessions and make a full record of the proceedings." Tex. R. App. P. 13.1(a). Further, before the trial started, appellants filed a "Request for Stenographic Recording of Proceedings," specifically requesting that "any action in this matter" be recorded. Appellants contend they objected to the court reporter's failure to record bench conferences, but the trial court stated that none of the bench conferences were recorded. The bench conferences at issue were those that took place while the jury remained in the courtroom and while noise generators were used to prevent the jury from hearing the discussion at the bench.

The first bench conference occurred during the opening statement by counsel for USAWP, at which point the court explained to the jury that it was putting on some background noise provided by the county. Several more bench conferences occurred as the opening statements continued. Appellants first expressed concern about the unrecorded bench conferences after moving for a mistrial during opening statements. Numerous unrecorded bench conferences followed, and appellants later requested that a record be made of the bench conferences.

To preserve error regarding the court reporter's failure to make a record of all the bench conferences, appellants were required to obtain a ruling from the trial court on a timely objection, request, or motion. *See Elec. Bankcard Sys. v. Retriever Indus.*, No. 14-04-00452-CV, 2005 WL 3435294, at *2 & n.8 (Tex. App.—Houston [14th Dist.] Dec. 15, 2005, no pet.) (mem. op.); *see also Valle v. State*, 109 S.W.3d 500, 508–09 (Tex. Crim. App. 2003); *Velazquez v. State*, 222 S.W.3d 551, 556–57 (Tex. App.—Houston [14th Dist.] 2007, no pet.). We presume for the sake of argument that appellants preserved error regarding the failure of the court reporter to make a record of the bench conferences and that the trial court's rulings on appellants' objections or requests were erroneous, and we examine whether this error would be harmful. *See* Tex. R. App. P. 44.1(a) (providing error of law is not reversible unless it probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case to the court of appeals).

20

Appellants point to part of the reporter's record during appellants' examination of expert witness Mitchell Young, M.D. Appellants assert that the trial court sustained two objections asserted by one defendant and that the grounds for the objection were not stated on the record but were discussed at an unrecorded bench conference just before the defendant lodged these objections. Appellants argue that because there is no record of the bench conference, this court cannot know the objection that was lodged and cannot determine whether the ruling was correct. But appellants have not assigned error on appeal as to these evidentiary rulings, nor have appellants argued that they wanted to assign error as to these rulings but were unable to properly present this argument because no record was made of the bench conferences. In any event, if appellants had challenged these rulings, this court would uphold the rulings if there is any ground for doing so, even if the trial court did not rely upon the proper ground and even if the defendant did not assert a proper ground for excluding the evidence. *See State Bar of Tex. v. Evans,* 774 S.W.2d 656, 658 n. 5 (Tex. 1989); *Racciato v. Davies*, No. 14-05-00354-CV, 2006 WL 2254402, at *3 (Tex. App.—Houston [14th Dist.] Aug. 8, 2006, no pet.) (mem. op.).

Appellants also suggest that the lack of a record of the bench conferences interfered with their ability to present their second issue. But we have been able to determine that the second issue and all of appellants' other issues lack merit without the need for the record of the bench conferences. After reviewing the record, we conclude that the failure of the court reporter to make a record of the bench conferences did not probably cause the rendition of an improper judgment and did not probably prevent appellants from properly presenting this case on appeal. *See* Tex. R. App. P. 44.1(a); *Garza v. Garza*, 217 S.W.3d 538, 556–57 (Tex. App.—San Antonio 2006, no pet.); *Palmer v. Espey Huston & Assocs.*, 84 S.W.3d 345, 351 (Tex. App.—Corpus Christi 2002, pet. denied). We overrule appellants' first issue.

\* \* \*

We overrule appellants' issues and affirm the trial court's judgment.


/s/     Jeffrey V. Brown
            Justice


Panel consists of Justices Frost, Seymore, and Brown.