Mowafac "Mike" JABRI and Joint Active Business Related, Inc., Appellants

v.

Kifah Wajih ALSAYYED, Appellee.

No. 14–02–00628–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 24, 2004.

Rehearing En Banc Overruled Oct. 7, 2004.

**22.** *Id.*

C. Zan Turcotte, Houston, for appellants.

G. Scott Williams, Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices FROST and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

In this suit under the Deceptive Trade Practices Act (DTPA),[1] appellants, Mike Jabri ("Jabri") and his corporation, Joint Active Business Related, Inc. (the "Corporation"), appeal the jury's verdict in favor of appellee, Kifah Wajih Alsayyed ("Alsayyed"). In seven issues, appellants contend (1) the evidence is insufficient to support the jury's award of damages; (2) Alsayyed was compensated twice for the same injury; (3) the DTPA does not apply to the underlying transaction; (4) the trial court erred in allowing Alsayyed's intervention; and (5) the trial court erred in permitting a bifurcated trial. We reverse that portion of the judgment ordering appellants to pay Alsayyed $60,000 in actual damages, remand to the trial court for an election between damages awarded as a result of Jabri's conduct and those awarded as a result of the Corporation's conduct, and render judgment deleting the awards of mental anguish damages. In all other respects, we affirm.

## I. FACTUAL BACKGROUND

Jabri owns several convenience stores in the Houston area. The Corporation operates most of the convenience stores. Jabri leased one of the stores, Beltway Fast Stop, to Sam and Nisreen Khatib. The Khatibs paid the Corporation $100,000 for the "goodwill" of the Beltway Fast Stop, paid a separate amount for the inventory, and paid $4,000 per month to lease the premises. In August 1998, the Corporation leased another store, Broadway Fast Stop, to Alsayyed. Alsayyed paid $120,000 for the "goodwill," $44,085 for the inventory, and $5,000 per month to lease the premises. Both Khatib and Alsayyed also paid an additional five to six hundred dollars per month in escrow for property taxes and insurance. Jabri represented to the Khatibs and Alsayyed that the Fast Stop convenience stores were ongoing businesses with a good customer base and each would generate a profit of approximately $10,000 per month.

Alsayyed and the Khatibs did not realize the profits promised by Jabri. Instead, they found themselves in businesses that did not have a substantial customer base. The stores were in unsavory locations, and were experiencing thefts and other crimes. The Khatibs filed suit against Jabri and the Corporation for alleged fraud and violations of the DTPA. Alsayyed intervened in the lawsuit, also suing Jabri and the Corporation for alleged fraud and violations of the DTPA. The jury found that both Jabri and the Corporation had knowingly engaged in an unconscionable action or course of action that was a producing cause of damages to the Khatibs and Alsayyed. The jury also found that the Khatibs and Alsayyed suffered mental anguish as a result of Jabri's and the Corporation's unconscionable actions. The trial court's initial judgment ordered both Jabri and the Corporation to pay the Khatibs $50,000 and Alsayyed $60,000 in actual damages, and to pay the Khatibs $12,500 and Alsayyed $5,000 in mental anguish damages. After judgment, the Khatibs settled their claims with Jabri and the Corporation and moved to modify the final judgment to exclude the amounts previously awarded to them. The court's amended final judgment ordered that the Khatibs take nothing and that Jabri and the Corporation each pay Alsayyed $60,000 in economic

1. *See* Chapter 17, Texas Business & Commerce Code.

damages, $5,000 in mental anguish damages, and reasonable attorney's fees.

In seven points of error, appellants contend (1) the evidence was insufficient to support the actual damages; (2) the jury compensated Alsayyed twice for the same injury; (3) the DTPA does not apply to Alsayyed's purchase of goodwill; (4) Alsayyed should not have been permitted to intervene in the Khatibs' lawsuit; (5) the evidence was insufficient to support a damage award against the Corporation; (6) the evidence was insufficient to support mental anguish damages; and (7) the trial court erred in bifurcating the trial.

## II. SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review

When a party attacks the legal sufficiency of an adverse finding on an issue it did not have the burden to prove at trial, it must demonstrate that there is no evidence to support the adverse finding. *Aquila Southwest Pipeline, Inc. v. Harmony Exploration, Inc.*, 48 S.W.3d 225, 236 (Tex.App.-San Antonio 2001, pet. denied). In reviewing a no-evidence issue, we consider all of the record evidence in a light most favorable to the verdict and indulge every reasonable inference from that evidence in support of the verdict. *Id.* We must determine whether the proffered evidence as a whole rises to a level that would "enable reasonable and fair-minded people to differ in their conclusion" *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994).

A challenge to the legal sufficiency of the evidence must be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is

no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

When reviewing a challenge to the factual sufficiency of the evidence, we must consider all of the evidence in the record. *See Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). If a party is attacking the factual sufficiency of an adverse finding when the other party has the burden of proof, that party must demonstrate there is insufficient evidence to support the adverse finding. *Aquila*, 48 S.W.3d at 236. In reviewing a factual insufficiency challenge, we weigh and examine all of the evidence that supports the verdict and that which is contrary to it. *Id.* We set aside the verdict only if the evidence is so weak the verdict is clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

### B. Actual Damages

In their first issue, Jabri and the Corporation [appellants] contend the evidence is legally and factually insufficient to support the award of actual damages. In separate questions, the jury found Jabri and the Corporation engaged in an unconscionable action or course of action that was a producing cause of damages to Alsayyed. The jury was then asked to determine what damages would compensate Alsayyed for his injury. The jury was instructed to consider the following element of damages:

The difference, if any, in the value of the assets actually received by Kifah Alsayyed and the value of all the assets if they had been conveyed to Kifah Alsayyed as represented. The difference in value, if any, shall be determined at the time and place of the transfer of the assets in August 1998.

■ Under common law, the measure of damages for misrepresentation is either the "out of pocket" measure or the "benefit of the bargain" measure. *See Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 817 (Tex.1997). The out-of-pocket measure compensates for the difference between what the consumer paid and what he received; the benefit of the bargain measure compensates for the difference between what a consumer was promised and what he received. *Id.* The DTPA allows a plaintiff to recover under the higher of these two measures. *Id.* However, under either measure of damages, the plaintiff is required to prove the value of the item received, *i.e.,* the fair market value. *W.O. Bankston Nissan v. Walters,* 754 S.W.2d 127, 128 (Tex.1988).

■ A property owner may testify as to fair market value if his testimony reveals that he is familiar with the market value of the property. *Redman Homes, Inc. v. Ivy,* 920 S.W.2d 664, 669 (Tex.1996). This testimony, however, must be based on the owner's assessment of the market and not the intrinsic value of the property to him. *See id.* Market value is defined as the price property would bring when offered for sale by one who desires, but is not obligated, to sell, and is bought by one who is under no obligation to purchase. *Waste Disposal Ctr., Inc. v. Larson,* 74 S.W.3d 578, 583 (Tex.App.-Corpus Christi 2002, pet. denied).

■ The record reflects that Alsayyed purchased the goodwill of the Broadway Fast Stop for $120,000, and the inventory for $44,085, and also that he agreed to pay $5,000 rent per month. Jabri represented that the convenience store was an on-going business with an established customer base and that Alsayyed would make a profit immediately after taking over the business. Alsayyed testified that when he took over the business, he discovered the store was in a high crime area and frequented by drug dealers, prostitutes, and vagrants. He also testified that the store was routinely robbed and that customers frequently drove away without paying for gasoline. In order to operate the business, Alsayyed was required to install outdoor lighting, a new lock on the front door, a cash register, and an ice machine.

When Alsayyed decided he no longer wanted to operate the business, Jabri recommended that Alsayyed find another tenant for the store. Alsayyed testified that he placed an advertisement in the newspaper and received several inquiries about leasing the store. However, when Alsayyed explained that the tenant would have to pay $120,000 in goodwill and $5,000 in monthly rent, he was unable to locate any one willing to pay $120,000 for goodwill alone. When asked what he received in exchange for his $120,000, Alsayyed testified he received nothing. Alsayyed further testified that much of the grocery and over-the-counter drug inventory could not be sold because the expiration dates on the items had passed. On appellants' behalf, regarding goodwill, Robby Lee Bates, an accountant, testified that in accounting terms, goodwill is the benefit of an ongoing business. Jabri testified that he had operated the Broadway Fast Stop and it was a going concern at the time he leased it to Alsayyed.

Viewing the evidence in the light most favorable to the verdict, we find it is legally sufficient to support the jury's verdict. Further, the evidence is not so weak that the verdict is clearly wrong and manifestly unjust. Appellants' first issue is overruled.

### C. The Corporation's Liability

■ In the first sub-part of their fifth issue, appellants argue the jury misunderstood the sufficiency of the evidence as to

the elements of Questions 20A and 23A. In response to Questions 13 and 16, the jury found Jabri and the Corporation engaged in false, misleading, or deceptive acts or practices. In response to Questions 14 and 17, the jury found Alsayyed suffered zero damages as a result of that conduct. In response to Questions 19 and 22, the jury found Jabri and the Corporation engaged in an unconscionable action or course of action. In response to Questions 20 and 23, the jury found Alsayyed suffered $60,000 in damages as a result of those actions. Appellants contend the jury was confused because it found zero damages as a result of a false, misleading, or deceptive act or practice, but found $60,000 in damages as a result of unconscionable conduct.

■■ When a party alleges conflicting jury answers, the threshold inquiry is whether the findings are about the same material fact. *Bender v. So. Pac. Transp. Co.,* 600 S.W.2d 257, 260 (Tex.1980). If the findings are about the same material fact, an appellate court must attempt to reconcile any conflict in the findings. *Id.* When the questions are amenable to more than one reasonable construction, we adopt the construction that avoids a conflict. *Id.; see also Anderson, Greenwood & Co. v. Martin,* 44 S.W.3d 200, 215 (Tex.App.-Houston [14 Dist.] 2001, pet. denied).

In this case, there is no evidence that the findings concern the same material fact. While the basic damage questions were worded identically, the predicate questions were worded differently. The jury could have found some of appellants' conduct to be deceptive and other conduct to be unconscionable. Because the questions are not about the same material fact, the answers did not conflict. *See Anderson, Greenwood & Co.,* 44 S.W.3d at 215. The first sub-part of appellants' fifth issue is overruled.

■ In the second sub-part of issue five, appellants contend the evidence is insufficient to support an award of damages against the Corporation. Appellants contend the transaction upon which Alsayyed's lawsuit is based was solely conducted by Jabri, the individual, and that the Corporation cannot be held liable for any unconscionable action. In his petition in intervention, Alsayyed alleged that Jabri made misrepresentations on behalf of the Corporation.

■ Corporations, by their very nature, cannot function without human agents. *Holloway v. Skinner,* 898 S.W.2d 793, 795 (Tex.1995). As a general rule, the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts. *Id.; see also Pabich v. Kellar,* 71 S.W.3d 500, 507 (Tex.App.-Fort Worth 2002, pet. denied). A corporation is a separate legal entity that normally insulates its owners or shareholders from personal liability. *Castleberry v. Branscum,* 721 S.W.2d 270, 271 (Tex.1986); *In re Marriage of Morris,* 12 S.W.3d 877, 885 (Tex. App.-Texarkana 2000, no pet.).

Here, the evidence is sufficient to show that Jabri was acting on behalf of the Corporation. The lease agreement for Broadway Fast Stop lists Jabri as the owner. The invoice for property taxes, however, was sent to Alsayyed by the Corporation. The Corporation also entered into a contract with Conoco for gasoline delivered to Broadway Fast Stop. Further, Jabri frequently requested that rent checks be made payable to the Corporation. Jabri testified that if he needed money, he would request the checks be made payable to him; if the Corporation needed money, he would request the checks be made payable to the Corporation. Jabri further testified that he is the sole shareholder and director of the Cor-

poration, and that the Corporation owns no assets and does not maintain books and records.

In sum, we find this evidence legally and factually sufficient to support the jury's verdict. The second sub-part of issue five is overruled.

### D. Mental Anguish Damages

■ In their sixth issue, appellants contend the evidence is legally and factually insufficient to link their actions to any mental anguish suffered by Alsayyed. Under the DTPA, mental anguish damages are recoverable when there is proof of deceptive or unconscionable actions or courses of action committed knowingly. *Norwest Mortgage, Inc. v. Salinas*, 999 S.W.2d 846, 862 (Tex.App.-Corpus Christi 1999, pet. denied). The jury found Jabri and the Corporation violated the DTPA and that such violations were committed knowingly. Jabri and the Corporation have not challenged the finding of a knowing violation.

■ An award of mental anguish damages requires either direct evidence of the nature, duration, or severity of the plaintiff's anguish or other evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger. *Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex.1996). Further, there must be proof that the knowing unconscionable action or course of action was a producing cause of the mental anguish. *Latham v. Castillo*, 972 S.W.2d 66, 69 (Tex.1998). To show appellants' unconscionable conduct was a producing cause of his mental anguish, Alsayyed must prove that appellants' actions had such an effect in producing the harm as to lead reasonable people to regard it as a cause, in which there lurks the idea of responsibility, rather than in the so-called "philosophic sense," which includes every one of the great number of events without which any happening would not have occurred. *See Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 472 (Tex.1991).

Alsayyed testified that the front door of the store would not lock, that there was no indoor restroom for employees, that the lighting was almost non-existent, and that the store was frequented by prostitutes, drug dealers, and vagrants. He further testified that a murder occurred at the store while he was operating it, he was robbed at gunpoint, and there were numerous late night burglaries of the store. Alsayyed maintains that the sale of the business and Jabri's intent that Alsayyed take over the operations of the store regularly placed him in harm's way and caused him to fear for his life.

Alsayyed failed to present any evidence, however, that his fear was caused by appellants' knowing unconscionable acts. *See Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex.1996). Alsayyed's fear stemmed from the high crime in the area, not from appellants' misrepresentations regarding the profitability of the business. Further, Alsayyed did not testify that any of appellants' actions caused or contributed to the existing conditions at Broadway Fast Stop. Additionally, Alsayyed did not testify that any of the conditions at the store caused him a high degree of mental pain and distress that was more than mere worry, anxiety, vexation, embarrassment, or anger. *See Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex.1996). There was no testimony that the conditions at Broadway Fast Stop caused Alsayyed physical injury, illness, loss of sleep, or a substantial disruption in his daily routine.

■ Alsayyed also contends the existing unsafe conditions were not disclosed to him and that the failure to disclose was the cause of his mental anguish. In his amended petition in intervention, Alsayyed stated that Jabri "never mentioned" the serious security problems at the store. Alsayyed did not allege in his petition that the failure to disclose caused him mental anguish. The petition did state that "Such facts resulted in Alsayyed being unable to keep employees working on the graveyard shift at the store for any significant period of time."

■ However, non-disclosure is neither fraudulent, nor negligent, unless there is a duty to disclose. *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex.2001). No general duty of disclosure arises between parties contemplating a contract. *Fleming v. Texas Coastal Bank of Pasadena*, 67 S.W.3d 459, 461 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). Under section 551 of the Restatement (Second) of Torts, a party to a business transaction has a duty to disclose certain matters in four situations that do not require the existence of a fiduciary relationship. *See* Restatement (Second) of Torts § 551 (1977). Even if section 551 of the Restatement (Second) of Torts applied under Texas law, it would not impose on appellants a duty to disclose the unsafe conditions under these circumstances. *See Bradford*, 48 S.W.3d at 755–56 (Tex.2001) (noting that Texas Supreme Court has not adopted section 551 of the Restatement (Second) of Torts and holding that, even if the court were to adopt it, there was legally insufficient evidence to support fraud liability). We find a complete absence of evidence that appellants' knowing unconscionable actions were a producing cause of Alsayyed's mental anguish and sustain appellants' sixth issue.

### III. DOUBLE RECOVERY

■ In their second issue, appellants assert the trial court erred in allowing the jury to compensate Alsayyed twice for the same injury. In response to Question 19, the jury found that Jabri engaged in an unconscionable action or course of action that was a producing cause of damages to Alsayyed. In response to Question 20A, the jury found the difference in the value actually received by Alsayyed and the value of the assets conveyed to Alsayyed as represented was $60,000. In response to Question 22, the jury found the Corporation engaged in an unconscionable action that was a producing cause of damages to Alsayyed. In response to Question 23A, the jury found the difference in the value of the assets received by Alsayyed and the value of the assets if they had been conveyed as represented was $60,000. The trial court entered judgment in accordance with the jury's verdict. Appellants contend the jury's verdict allows Alsayyed to recover twice for the same injury.

■ The "one satisfaction rule" prohibits a plaintiff from recovering twice for a single injury. *Crown Life Ins. v. Casteel*, 22 S.W.3d 378, 390–91 (Tex.2000). The rule provides that when a claimant seeks recovery for the same injuries from multiple parties, the claimant is entitled to only one recovery on those injuries. *Utts v. Short*, 81 S.W.3d 822, 831 (Tex.2002). Under Texas law, the "one satisfaction rule" is designed to prevent a windfall to the plaintiff, and dictates that when a plaintiff files suit against multiple defendants for a single injury, he must elect between the damage awards. *See First Title of Waco v. Garrett*, 860 S.W.2d 74, 78 (Tex.1993).

■ The evidence supports appellants' contention that the jury's verdict amounts to a double recovery. The damages sought by Alsayyed were for the

misrepresentations made to him by Jabri, individually, and on behalf of the Corporation. Alsayyed's injury was not divisible between the two defendants. Therefore, the trial court erred in not requiring Alsayyed to elect between the damages awarded as a result of Jabri's unconscionable conduct and the damages awarded as a result of the Corporation's unconscionable conduct. Where the prevailing party fails to elect between damage amounts awarded for the same injury, the court should use the findings affording the greater recovery and render judgment accordingly. *See American Baler Co. v. SRS Sys., Inc.*, 748 S.W.2d 243, 246 (Tex. App.-Houston [1st Dist.] 1988, no writ). In this case, however, the damage awards were identical. Therefore, we remand to the trial court for Alsayyed's election between the damages awarded as a result of Jabri's unconscionable conduct and those awarded as a result of the Corporation's unconscionable conduct. Appellants' second issue is sustained.

## IV. CONSUMER STATUS

In their third issue, appellants contend the trial court erred in upholding the jury's award of damages under the DTPA because Alsayyed was not a consumer as contemplated by that statute. To pursue a DTPA cause of action, a plaintiff must be a consumer. TEX. BUS. & COM.CODE ANN. § 17.50(a) (Vernon 2002); *Crown Life*, 22 S.W.3d at 386. The question of consumer status under the DTPA is a question of law for the court to decide. *Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394, 401 (Tex.App.-San Antonio 2000, no pet.). To qualify as a consumer, a plaintiff must meet two requirements: (1) the person must seek or acquire goods or services by purchase or lease, and (2) the goods or services purchased or leased must form the basis of the complaint. *Id.* The DTPA excludes those transactions that convey wholly intangible property rights, which are not associated with any collateral services or goods. *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174–75 (Tex.1980). In evaluating Alsayyed's consumer status, we examine whether his objective was the purchase or lease of a good or service. TEX. BUS. & COM.CODE ANN. § 17.45 (Vernon 2002); *see also La Sara Grain Co. v. First Nat'l Bank*, 673 S.W.2d 558, 567 (Tex. 1984).

Appellants contend that Alsayyed's DTPA claim is based solely on his purchase of the goodwill of the business, which is an intangible. The record reflects, however, that when Alsayyed acquired the business, he not only purchased goodwill, but in the same transaction, purchased the inventory of the store and services associated with operating it. Jabri represented that he would help Alsayyed learn how to operate the business including reporting sales tax and ordering inventory. Jabri further provided the services of his brother to act as a bookkeeper during the first month Alsayyed operated the business. These goods and services were an objective of the transaction and not merely incidental to it. Therefore, the transaction between appellants and Alsayyed involved the purchase or lease of goods and services for purposes of the DTPA. Appellants' third issue is overruled.

## V. INTERVENTION

In their fourth issue, appellants contend the trial court erred in permitting Alsayyed to intervene in the Khatibs' lawsuit. Any party may intervene by filing a pleading, subject to being stricken by the court on motion of any party. TEX.R. CIV. P. 60. The trial court has broad discretion in determining whether an intervention should be struck. *Guar-*

*anty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex.1990); *Houston Lighting and Power v. City of San Antonio*, 896 S.W.2d 366, 372 (Tex. App.-Houston [1st Dist.] 1995, writ dism'd). Once the motion to strike has been filed, the burden shifts to the intervenor to show a justiciable interest in the lawsuit. *Mendez v. Brewer*, 626 S.W.2d 498, 499 (Tex.1982). The interest asserted by the intervenor may be legal or equitable in nature. *Id.* A party has a justiciable interest in a lawsuit, and thus a right to intervene, when his interests will be affected by the litigation. *Law Offices of Windle Turley, P.C. v. Ghiasinejad*, 109 S.W.3d 68, 71 (Tex.App.-Fort Worth 2003, no pet.).

Alsayyed's interest, as the intervenor, must be such that if the original action had never been commenced, he could have brought it as the sole plaintiff and would have been entitled to recover in his own name to the extent of at least part of the relief sought. *Guaranty Bank*, 793 S.W.2d at 657. An intervenor must show some present legal or equitable interest in the subject matter that makes it proper for him to participate in the proceeding. *McCord v. Watts*, 777 S.W.2d 809, 811 (Tex.App.-Austin 1989, no writ). Applying this general rule to the case at hand, appellant would have had no standing, on either legal or equitable grounds, to have brought the original claims asserted by the Khatibs. Alsayyed had no interest in the Khatibs' claims and they had no interest in his. Alsayyed's intervention in the Khatibs' lawsuit was not necessary to effectively protect his interest. His interest would have been adequately protected by a separate suit against the appellants.

The trial court's refusal to strike the intervention under these circumstances constituted an abuse of discretion. However, from our review of the record, we fail to see how this error was harmful. Had Alsayyed not been allowed to intervene in the suit, we presume he would have filed a separate suit to assert his claims. Appellant does not suggest otherwise, nor does appellant cite to any place in the record demonstrating any harm he suffered as a result of having Alsayyed's claims adjudicated in this case rather than in a separate proceeding. Although appellants make general and conclusory claims in their appellate brief that they were prejudiced "by confusing the jury and aggregating the claims against Appellants," the only record cite appellants provide in their entire briefing on this issue is to the motion to strike intervention, response, and order. Appellants cite to no portion of the trial that they claim demonstrates harm nor do they otherwise give support for any alleged harm.

Although Alsayyed went to the jury on his claims for laundry-list DTPA violations, unconscionable-conduct DTPA violations, and common-law fraud, the jury found liability and damages only as to his unconscionable-conduct claims. Appellants do not assert that the evidence is insufficient to support the jury's liability findings as to these claims. In fact, there is ample evidence in the record to support the jury's findings of liability and economic damages as to these claims. Based on our review of the record, we conclude that the trial court's error in failing to strike the intervention did not probably cause the rendition of an improper judgment or probably prevent appellants from properly presenting the case to the court of appeals. Therefore, the error provides no ground for reversal. *See* TEX.R.APP. P. 44.1(a); *McCord*, 777 S.W.2d at 811 (holding that any error in failing to strike intervention was harmless). Appellants' fourth issue is overruled.

## VI. BIFURCATION OF TRIAL

In their seventh issue, appellants contend bifurcation of the trial was improper because the jury was allowed to separately consider the single issue of statutory damages under the DTPA. Following the jury's initial verdict, a second phase of trial took place where the jury was asked to decide what sum of money as additional damages should be awarded because Jabri's and the Corporation's conduct was committed knowingly. The additional damages were based on mental anguish suffered by Alsayyed. In light of our earlier determination that mental anguish damages are not supported by the evidence, we need not address whether bifurcation of the trial was error. Appellants' seventh issue is overruled.

## VII. CONCLUSION

Because the judgment improperly awarded double recovery, we reverse that portion of the judgment that ordered Jabri and the Corporation to each pay Alsayyed $60,000 in actual damages and remand to the trial court for an election between the damages awarded as a result of Jabri's unconscionable conduct and those awarded as a result of the Corporation's unconscionable conduct. Having found legally insufficient evidence to support the award of mental anguish damages, we render judgment deleting mental anguish damages. In all other respects, the judgment is affirmed.