**Opinion issued May 21, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00388-CV

————————————

**DARBY KYLE, INDIVIDUALLY AND D/B/A SOUTH COAST ROOFING AND REPAIR, AND SOUTH COAST ROOFING AND REPAIR, LLC,**
**Appellants**

**V.**

**ALMA ZEPEDA, Appellee**

---

**On Appeal from the County Civil Court at Law No. 2**
**Galveston County, Texas**
**Trial Court Case No. CV0062428**

---

## MEMORANDUM OPINION

Appellants, Darby Kyle, individually and *d/b/a* South Coast Roofing and Repair and South Coast Roofing and Repair, LLC (collectively, "South Coast"), challenge the trial court's post-answer default judgment rendered in favor of

appellee, Alma Zepeda.[1]  In six issues, South Coast argues that (1) the trial court erred in denying its motion for new trial and refusing to set aside the default judgment; (2) there was no evidence or insufficient evidence to support the trial court's award of mental anguish damages; (3) the trial court erred in trebling the mental anguish damages; (4) the trial court erred in not abating the matter when Zepeda failed to provide proof of notice as required by the Deceptive Trade Practices Act ("DTPA"); (5) the trial court erred in awarding attorney's fees under the DTPA; and (6) the evidence was insufficient to support the trial court's award of actual damages.

We affirm in part and reverse and render in part.

## Background

South Coast and Zepeda entered into a contract for roofing repair, and South Coast removed and reinstalled Zepeda's roof.  Zepeda paid South Coast $18,027.04, leaving a balance of $2,644 on her account.  Zepeda then began having problems with leaks.  South Coast made several attempts to repair the roofing and stop the leaks, but these attempts were unsatisfactory. Zepeda stopped payment on the final check she wrote to South Coast to pay the $2,644 balance remaining on her account.

---

[1]  The trial court also rendered judgment against Shelley Kyle.  Shelley Kyle has not filed a brief or otherwise presented a claim for relief to this court.

2

On February 10, 2010, South Coast sued Zepeda in small claims court for $2,687.26, the balance due for the services rendered under the contract plus court costs.

On March 1, 2010, Zepeda filed suit in the County Court at Law Number 2 of Galveston County, alleging breach of contract, breach of express warranty, breach of the implied warranty that the work was conducted in a good and workmanlike manner, breach of the implied warranty of habitability and/or of Texas Residential Construction Commission Act ("TRCCA") section 430.002, violations of the DTPA, common law fraud, negligence, and negligent misrepresentation. Zepeda also moved for abatement of the proceeding in the small claims court.

On April 5, 2010, South Coast answered with a general denial, a verified plea denying that all conditions precedent to suit under the DTPA and the TRCCA had been performed or had occurred because Zepeda did not give the required notices, a motion to abate under the DTPA and TRCCA, and the assertion of affirmative defenses, including, among others, laches, waiver, and repudiation and prior breach of the contract by Zepeda. The answer also asserted that Zepeda's damages "were proximately caused by [her] own negligence and independent actions," that Zepeda failed to mitigate her damages, that her damages were limited to the lost value of the property or loss of use of the property, and that she was not

entitled to any mental anguish damages for injury to personal property or real property.

Zepeda responded to the plea in abatement, but no further action was taken on the motion to abate.

On July 10, 2010, Zepeda amended her original petition, adding a request for mental anguish damages among other things.

On August 2, 2010, Darby Kyle answered the amended petition with a general denial.

On August 6, 2010, South Coast's attorney moved to withdraw as counsel, asserting that South Coast had failed to pay its attorney's fees and expenses as agreed.

On August 17, 2010, Zepeda again amended her original petition.

On August 26, 2010, the trial court granted South Coast's counsel's motion to withdraw. The record also reflects that this case was referred to mediation and originally set for trial in November 2010, but it was eventually reset for trial on February 7, 2011. Finally, the record indicates that attorney Robert Pelton conducted some work on South Coast's behalf in this case between August and November 2010.

At the trial on February 7, 2011, South Coast failed to appear. Zepeda presented evidence to the trial court in the form of her own testimony, the testimony of an expert witness, and several documents and other exhibits.

On February 8, 2011, the trial court entered judgment in favor of Zepeda. The judgment stated that Zepeda "alleged joint enterprise, breach of contract, breach of warranty and violations of the Deceptive Trade Practices-Consumer Protection Act" and that Zepeda "has proven each of these claims." The trial court awarded Zepeda $28,783.06 in actual damages, $20,000 for mental anguish damages, and $30,250 for attorney's fees. The trial court found that South Coast's "conduct was a knowing and intentional violation of the Deceptive Trade Practices-Consumer Protection Act" and awarded Zepeda "treble the amount of her actual and mental anguish damages."

On February 16, 2011, South Coast filed a motion for new trial. In the motion, South Coast's new attorney, Anthony Griffin, stated that Darby Kyle first contacted him regarding this case on January 14, 2011 and retained him as counsel on behalf of South Coast on February 2, 2011. At that time, Griffin did not have a copy of the file, but Kyle told him "off his memory" that the trial date was "on or about February 22, 2011." Griffin told Kyle that he would enter an appearance and either seek a continuance or prepare for trial. Griffin received the file from Pelton on February 10, 2011, at which time Griffin realized that the trial court had already

5

entered judgment. Griffin's motion stated that South Coast's failure to appear was due to miscommunication, stating that Kyle "would have appeared [at] trial if [he] had known that retained counsel was not going to appear and answer and/or reset the matter" and that he "would have made an appearance if he had understood the new trial date." This motion sought a hearing. It was accompanied by Griffin's affidavit, averring that "the information contained in this motion is true and correct."

The trial court held a hearing on the motion for new trial on March 18, 2011. The record reflects that Darby Kyle was present to give testimony, but, upon Zepeda's objection, the trial court refused to allow him to testify because he had not filed an affidavit with the motion for new trial. South Coast's attorney, who was an associate of Griffin's, then stated, "I'm not aware of anything which precludes [Kyle] from testifying about those issues [regarding notice and other factors relevant to setting aside the default judgment] based on the fact that he has not himself verified anything contained within the motion," but the trial court completed the hearing without allowing Kyle to testify. South Coast's attorney stated on the record that South Coast was not represented by an attorney at the time the case was reset from November to February and that Kyle did not receive notice of the new trial setting. The attorney also stated that Kyle was there to testify that any failure to appear was not the result of conscious indifference or intentional

6

conduct and that he had hired an attorney to appear for him in this matter. Furthermore, South Coast's attorney stated that it had a meritorious defense and that Kyle "is here today to tell the Court that he is able and willing to proceed to trial" and that "he will make [Zepeda] whole for the cost of having to take a default judgment."

The trial court then stated, "One of the things that I found to be completely lacking in the Motion for New Trial is any mention or even a hint at a meritorious defense. . . ." South Coast's counsel responded, "Your Honor, again, that's why I would like to have Mr. Kyle testify." Counsel also stated that information regarding a meritorious defense was "contained probably within some of the pleadings" and asked the trial court to "take judicial notice of the contents of the file as to what the pleadings were."

The trial court concluded the hearing, stating that it could not hear testimony from someone who had not provided a sworn affidavit and that the motion for new trial did not contain a meritorious defense. South Coast's attorney asked that the hearing be reset or continued until Griffin, the attorney who filed the affidavit with the motion for new trial, could appear personally and testify and that the trial court take judicial notice of the contents of the file. The trial court stated that it denied South Coast's requests and that "the Court has the complete file before it."

7

On March 23, 2011, the trial court denied South Coast's motion for new trial.

On April 13, 2011, South Coast filed an "amended motion for new trial," reasserting its request that the default judgment be set aside. This amended motion was accompanied by the affidavits of Griffin and Darby Kyle. Griffin's affidavit reiterated the facts contained in the first motion for new trial. Kyle's affidavit stated that, at the time he retained Griffin, he was not aware of any trial setting. Kyle also averred that "Texas Windstorm and the City of Galveston inspected the roof and the roof passed inspection." He also averred that the roof he installed was not defective and that an engineer with Coastal Building Inspections in Alvin, Texas, the entity that did the Texas Windstorm Certification, was "willing to testify that the roof is fine." Finally, he stated, "it has come to my attention that [Zepeda] contacted Coastal and was informed by Coastal Inspection that her roof was fine and it did pass windstorm inspections."

Zepeda objected to the amended motion for new trial and moved to strike it. The trial court did not rule on the amended motion for new trial, and South Coast filed its notice of appeal on April 29, 2011.

## Setting Aside Default Judgment

In its first issue, South Coast argues that the trial court erred in denying the motion for new trial and refusing to set aside the default judgment because it met

8

the requirements of *Craddock v. Sunshine Bus Lines, Ltd.* for setting aside a post-answer default judgment.[2]  *See* 133 S.W.2d 124, 126 (Tex. 1939); *see also Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 925–26 (Tex. 2009) (per curiam) (*Craddock* test governs post-answer default judgments as well as no-answer default judgments).

## A. Standard of Review

A trial court's decision to overrule a motion to set aside a default judgment and grant a new trial is subject to review for abuse of discretion.  *Dolgencorp*, 288 S.W.3d at 926; *Interconex, Inc. v. Ugarov*, 224 S.W.3d 523, 536 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Old Republic Ins. Co. v. Scott*, 873 S.W.2d 381, 382 (Tex. 1994) (per curiam)).  "While trial courts have some measure of discretion in the matter, as, in truth, they have in all cases governed by equitable principles, it is not an unbridled discretion to decide cases as they might

---

[2] As a preliminary matter, Zepeda argues that South Coast did not have standing to assert its motion for new trial because it was not in compliance with the Tax Code at the time the motion for new trial was filed.  *See* TEX. TAX CODE ANN. § 171.252 (Vernon 2008) (providing that if corporate privileges are forfeited under this subchapter, "the corporation shall be denied the right to sue or defend in a court of this state.").  However, courts of this state have concluded that this provision does not prevent a corporation that has forfeited its corporate privileges from defending claims against it.  *See, e.g.*, *Cruse v. O'Quinn*, 273 S.W.3d 766, 770 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (holding law firm's forfeiture of corporate charter did not strip it of its right to appeal, in spite of provisions in section 171.252); *Mello v. A.M.F. Inc.*, 7 S.W.3d 329, 331 (Tex. App.—Beaumont 1999, pet. denied) (stating that, despite clear language of section 171.252, "the statute has historically been limited to prohibit defendants from bringing cross actions, not from merely defending lawsuits").

deem proper, without reference to any guiding rule or principle." *Interconex*, 224 S.W.3d at 536 (quoting *Craddock*, 133 S.W.2d at 126). A trial court abuses its discretion if it fails to grant a new trial when all three elements of the *Craddock* test are met. *Dolgencorp*, 288 S.W.3d at 926 (discussing *Craddock*, 133 S.W.2d at 126).

A post-answer default judgment occurs when a timely answer that puts the merits of the plaintiff's claims at issue is on file, but the defendant fails to appear at trial. *Sharif v. Par Tech., Inc.*, 135 S.W.3d 869, 872 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (citing *Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex. 1979)); *see Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 183 (Tex. 2012). If a defendant has filed such an answer, the defendant's failure to appear at trial is neither an abandonment of the defendant's answer nor an implied confession of any issues thus joined by the defendant's answer. *Paradigm Oil*, 372 S.W.3d at 183. Post-answer default judgments cannot be entered on the pleadings, but, rather, a plaintiff must offer evidence and prove his case as in a judgment at trial. *Id.* When a default judgment is attacked by a motion for new trial in the trial court, the parties may introduce affidavits, depositions, testimony, and exhibits to explain what happened. *Fidelity & Guaranty Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 573–74 (Tex. 2006) (per curiam).

10

Under the *Craddock* test, a post-answer default judgment should be set aside when the defendant establishes that (1) nonappearance at trial was not intentional or the result of conscious indifference, but was the result of an accident or mistake; (2) the motion for new trial sets up a meritorious defense; and (3) granting the motion will occasion no undue delay or otherwise injure the plaintiff. *Dolgencorp*, 288 S.W.3d at 925 (citing *Craddock*, 133 S.W.2d at 126); *Mathis v. Lockwood*, 166 S.W.3d 743, 744 (Tex. 2005) (per curiam). "A defendant satisfies its burden as to the first *Craddock* element when its factual assertions, if true, negate intentional or consciously indifferent conduct by the defendant and the factual assertions are not controverted by the plaintiff." *Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012) (citing *In re R.R.*, 209 S.W.3d 112, 115 (Tex. 2006) (per curiam)).

A meritorious defense has been set up so as to meet the second *Craddock* prong if the movant's motion and supporting affidavits set forth facts which in law constitute a meritorious defense, regardless of whether those facts are controverted. *In re R.R.*, 209 S.W.3d at 116. While an appellant is not required to prove its meritorious defense, it must produce some evidence that, if true, would support its meritorious defense. *Wal-Mart Stores, Inc. v. Kelley*, 103 S.W.3d 642, 644 (Tex. App.—Fort Worth 2003, no pet.) (citing *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966)). The movant must either submit competent evidence to support the

11

*Craddock* elements or attach affidavits to its motion. *Id.* A meritorious defense is one that, if proved, would cause a different result upon a retrial of the case, although not necessarily a totally opposite result. *Jaco v. Rivera*, 278 S.W.3d 867, 873 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Hahn v. Whiting Petroleum Corp.*, 171 S.W.3d 307, 311 (Tex. App.—Corpus Christi 2005, no pet.).

## B.     Existence of Meritorious Defense

South Coast argues that it had a meritorious defense. However, we disagree that it established the existence of a meritorious defense. It is undisputed that South Coast's original motion for new trial and accompanying affidavits did not assert any facts that would establish the existence of a meritorious defense.

Kyle attempted to testify at the motion for new trial hearing, and his counsel stated on the record that Kyle would have testified regarding South Coast's meritorious defenses. The trial court, at the invitation of Zepeda, prohibited Kyle from testifying. Although South Coast's attorney informed the trial court that he was "not aware of anything which precludes [Kyle] from testifying . . . based on the fact that he has not himself verified anything contained within the motion," counsel did not object to the trial court's ruling or attempt to make an offer of proof as to the evidence excluded. *See* TEX. R. APP. P. 33.1 (requiring that objection be presented to trial court in order to preserve complaint on appeal); TEX. R. EVID. 103(a)(2) (providing that error may not be predicated on ruling that

12

excludes evidence unless substantial right of party is affected and substance of evidence was made known to trial court by offer of proof); *Fletcher v. Minn. Min. & Mfg. Co.*, 57 S.W.3d 602, 606 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) ("To challenge exclusion of evidence by the trial court on appeal, the complaining party must present the excluded evidence to the trial court by offer of proof.").

South Coast cites the evidence asserted in Kyle's affidavit filed with the amended motion for new trial that Zepeda's roof had passed inspection and that it had an expert who would testify that Zepeda's roof was "fine" as evidence supporting a meritorious defense. Zepeda, however, argues that we may not consider this affidavit because the amended motion for new trial was untimely, and we agree. An amended motion for new trial can preserve issues for appeal, but only if it is filed within thirty days after the final judgment or order is signed.[3]

---

[3] To the extent that South Coast is attempting to argue that its amended motion for new trial provided this Court with record evidence supporting its claim, we likewise find this argument unavailing. An appellate court may be able to discern from the record the nature of the evidence and the propriety of the trial court's ruling; however, without an offer of proof we can never determine whether the exclusion of the evidence was harmful. *Bobbora v. Unitrin Ins. Servs.*, 255 S.W.3d 331, 335 (Tex. App.—Dallas 2008, no pet.); *see also Fletcher v. Minn. Min. & Mfg. Co.*, 57 S.W.3d 602, 608–09 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (holding offer of proof serves primarily to enable reviewing court to assess whether excluding evidence was erroneous and, if so, whether error was harmful, and stating, in context of post-plenary-power bill of exception, "Appellants cannot cure their error in not making an offer of proof . . . through their formal bill because the trial court could not cure . . . the error, if any, in excluding that testimony."). Here, without knowing what facts Kyle would have

13

TEX. R. CIV. P. 329b(b) (providing that one or more amended motions for new trial may be filed within thirty days after judgment or other complained-of order is signed); TEX. R. CIV. P. 329b(e) (providing that trial court has plenary power to grant new trial or modify judgment until thirty days after all timely-filed motions are overruled). "[A]n untimely amended motion for new trial does not preserve issues for appellate review, even if the trial court considers and denies the untimely motion within its plenary power period." *Moritz v. Preiss*, 121 S.W.3d 715, 721 (Tex. 2003). Here, the trial court rendered judgment on February 8, 2011, and South Cast filed the amended motion for new trial on April 13, 2011.

We conclude that South Coast failed to establish the second *Craddock* factor, and, thus, the trial court did not abuse its discretion in denying the motion for new trial and refusing to set aside the default judgment. *See Dolgencorp*, 288 S.W.3d at 926. We overrule South Coast's first issue.

## Sufficiency of the Evidence

In its second and third issues, South Coast argues that there was no evidence or insufficient evidence to support the trial court's award of mental anguish damages and that the trial court erred in trebling the mental anguish damages. In

---

testified to, we cannot determine whether South Coast would have established a meritorious defense, and therefore, whether the exclusion of Kyle's testimony was harmful.

its sixth issue, South Coast argues that the evidence was insufficient to support actual damages.

## A. Evidence Presented at Trial

At the trial on February 7, 2011, Zepeda testified regarding her agreement with South Coast and the resulting work. She introduced the contract she entered into with South Coast for the repair of her roof. She testified that South Coast began making repairs on her roof in August 2009 and that she first had an issue with the roof in mid-September when it began leaking after a heavy rain. She notified South Coast about the problem, and it sent a repair man to fix the problem. Zepeda stated that South Coast attempted to correct the problem about three or four times. After the fourth occasion, it sent a contractor from a company called Big Country to work on the roof. However, the roof continued to leak.

Regarding the damage done to her home, Zepeda testified that the roof leaked in the kitchen and a bedroom. She also offered photographs of the damage into evidence. She stated that, in an effort to mitigate the damage, she had placed tarps on her roof and had also hired a contractor to do some maintenance. She stated that she also had issues with the construction of the roof generally, such as broken slats and nails that were "popping up" and "not adhering to anything other than the felt which . . . doesn't hold anything." She stated that she incurred $2,000 in out-of-pocket expenses "securing the house trying to mitigate damages" and that

15

she had received an estimate of $4,000 to repair the interior of the house. She also obtained an estimate of $22,783.06 for completing all of the necessary roofing repairs.

According to Zepeda, Shelley Kyle visited Zepeda's house and brought the contractor from Big Country with her. Shelley Kyle offered to have Big Country repair all of the problems with Zepeda's roof in exchange for Zepeda's paying the final balance on her account with South Coast, and Zepeda agreed. She wrote a check to South Coast for the remaining balance on her account, and Shelley Kyle wrote a check to Big Country for its repairs. Zepeda stated that Big Country repaired the interior, but the roof continued to leak and those repairs were never fully completed.

Zepeda testified that she sent South Coast a demand letter on November 17, 2009, via e-mail and certified mail. The trial court admitted the letter and accompanying pictures into evidence. The demand later stated, "On Friday, November 13, 2009 I paid you in good faith the final balance of $2,664.00 due to South Coast Roofing and Repair for the final payment for the roof installation of August 24, 2009." She notified South Coast that she had stopped payment on the check, described her specific concerns with the roof, and enclosed photographs of the problematic areas. She stated that the roof did not comply with their agreement and that she "expect[ed] full resolution of this situation."

Zepeda stated that the day after she e-mailed South Coast she received an e-mail from Darby Kyle "calling me a rip-off artist, a scam artist, and that he would see me in court." Zepeda stated that South Coast did in fact sue her a few months later, and the trial court admitted a copy of the petition South Coast filed against Zepeda in small claims court.

Thomas Wade, a contractor with extensive roofing and construction experience, testified that he inspected Zepeda's roof in September 2009. He testified that the sub-decking of Zepeda's roof did not meet the Galveston County municipal code and building code standards. He also testified that the nail pattern in nailing shingles is important in securing the shingles to the roofing slats and that an improper nail pattern could cause the nails to pop up, allow the shingles to pop up, and allow water to enter the roof. He testified that the shingles on Zepeda's roof were not nailed to any solid surfaces. He further testified that there was no flashing on the flat roof, which meant that there was no "seal between the roof and the main part of the house and the water can penetrate through there," which caused leaking into Zepeda's kitchen and bedroom. He also observed various instances of water damage caused by the leaking roof. He agreed that Zepeda would need to have her roof replaced and that the estimate she obtained of $22,783.06 was reasonable. Wade also believed the estimate of $4,000 for repairing the damage to the interior of the house was reasonable, based on his

construction experience. Finally Wade testified that of the $20,714.30 that South Coast charged Zepeda for the roofing work, the "gross net profit" from the job was $14,806.14.

Finally, Zepeda's attorney testified regarding the work he and his firm had completed on her case and his reasonable and necessary attorney's fees.

The trial court stated, in its judgment:

> [Zepeda] alleged joint enterprise, breach of contract, breach of warranty and violations of the Deceptive Trade Practices-Consumer Protection Act. [Zepeda] has proven each of these claims. [Zepeda] has presented evidence that supports her injuries in the amounts of: (a) $28,783.06 in actual damages; (b) $20,000 for mental anguish; and (c) $30,250.00 for attorney's fees. Further, the Court finds that Defendants' conduct was a knowing and intentional violation of the Deceptive Trade Practice-Consumer Protection Act, and, awards [Zepeda] treble the amount of her actual and mental anguish damages.

The trial court went on to order Darby Kyle, individually and *d/b/a* South Coast, South Coast, and Shelley Kyle, jointly and severally, to pay Zepeda "the sum of $86,349.18 for treble actual damages"; $1,352.41 in prejudgment interest for the amount of actual damages; and "the sum of $60,000 for treble mental anguish damages."

## B.    Standard of Review

When, as here, the defendant fails to appear at trial after filing an answer, the plaintiff shoulders the burden of proof on each element of her case because a defendant admits nothing by making a post-answer default. *See Stoner*, 578

18

S.W.2d at 682; *Sharif*, 135 S.W.3d at 872. Thus, Zepeda was required to offer evidence and prove her case as in a judgment on trial. *See Stoner*, 578 S.W.2d at 682; *Sharif*, 135 S.W.3d at 873. South Coast argues that the evidence was legally and factually insufficient to support the trial court's award of actual damages, mental anguish damages, and treble mental anguish damages.

A trial court's findings are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's answer. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). In a legal sufficiency, or "no-evidence" review, we determine whether the evidence would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In conducting this review, we credit favorable evidence if a reasonable fact-finder could, and we disregard contrary evidence unless a reasonable fact-finder could not. *Id.* We consider the evidence in the light most favorable to the finding under review and indulge every reasonable inference that would support it. *Id.* at 822. We must sustain a no-evidence contention only if (1) the record reveals a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810.

In reviewing the factual sufficiency of the evidence, we "must consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Arias v. Brookstone, L.P.*, 265 S.W.3d 459, 468 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)).

## C.     Actual Damages

Regarding actual damages, South Coast argues that the evidence was insufficient because the majority of the damages Zepeda sustained arose from problems with the "flat roof" portion of her roof—a portion of the roof South Coast alleged was not contemplated by the roofing repair agreement between South Coast and Zepeda.

However, the agreement signed by both South Coast and Zepeda stated that South Coast would remove the existing roofing on Zepeda's "house."[4] It further provided that South Coast would "install new Metal Flashings on complete roof as needed." Both Zepeda and Wade testified regarding numerous problems with South Coast's work on the house's roof, and Wade testified that the $22,783.06 estimate for the cost of replacing her roof was reasonable. Wade specifically testified that the leaking in Zepeda's kitchen and bedroom was the result of the

---

[4] The proposal was a pre-printed form that allowed the estimator to mark the proposed work with a check mark. The estimator placed a check next to "Remove existing roofing on" and placed a second check to indicate "House." Other (unchecked) options included "Garage," "Shed," "Flat Roof," and "Other."

lack of flashing on the flat roof, meaning that there was no "seal between the roof and the main part of the house." Installation of new metal flashings "on [the] complete roof as needed" was a contemplated part of Zepeda's and South Coast's agreement.

Zepeda and Wade also testified about the damage to Zepeda's home as a result of South Coast's faulty roofing and the expenses incurred in making repairs. Zepeda testified that she had spent $2,000 in out-of-pocket expenses trying to mitigate damage from the leaking roof and that she had received an estimate of $4,000 to repair the interior of her home.

Thus, we conclude that Zepeda offered evidence that would enable reasonable and fair-minded people to conclude that Zepeda suffered $28,783.06 in actual damages, as the trial court found. *See City of Keller*, 168 S.W.3d at 827. Furthermore, considering and weighing all of the evidence, including the terms of the contract and Zepeda's and Wade's testimony, we conclude that the trial court's award of $28,783.06 in actual damages was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Arias*, 265 S.W.3d at 468. Thus, we conclude that the evidence supporting the trial court's award of actual damages was legally and factually sufficient.

We overrule South Coast's sixth issue.

21

**D.     Mental Anguish Damages**

In its second and third issues, South Coast argues that there was no evidence or insufficient evidence to support the trial court's award of mental anguish damages and that the trial court erred in trebling the mental anguish damages.

The DTPA provides for recovery of mental anguish damages, and when there is proof that the defendant committed the deceptive or unconscionable actions or courses of action knowingly, the amount can be trebled. *See* TEX. BUS. & COM. CODE ANN. § 17.50(b)(1) (Vernon 2011). An award of mental anguish damages requires either: (1) direct evidence of the nature, duration, or severity of the plaintiff's anguish, establishing a substantial disruption in his daily routine; or (2) other evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger. *CA Partners v. Spears*, 274 S.W.3d 51, 76 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995)). There must also be proof that the knowing, unconscionable action or course of action was a producing cause of the mental anguish. *Jabri v. Alsayyed*, 145 S.W.3d 660, 669 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Latham v. Castillo*, 972 S.W.2d 66, 69 (Tex. 1998)).

South Coast argues that the trial court erred in awarding Zepeda mental anguish damages and treble mental anguish damages because she presented no

evidence of mental anguish. Zepeda argues that she presented the following evidence of emotional distress: Zepeda testified that she had to live with a tarp on the back of her house for nearly two years and has "had to deal with mold issues"; she was unable to live in her home at times because of wind noise and the inconvenience of repairs; and she "was insulted and identified to others as a 'RIP OFF ARTIST' who is 'used to screwing people out of their money.'"

However, we agree with South Coast that none of this evidence constitutes "direct evidence of the nature, duration, or severity of [Zepeda's] anguish or other evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger." *Jabri*, 145 S.W.3d at 669. Zepeda provided no evidence at all of her mental or physical state or of the nature, duration, or severity of her mental anguish. *See id.* Her testimony established that she experienced inconvenience, occasional disruption in her living arrangements, and insults, but there was no testimony that South Coast's actions caused mental anguish that resulted in "physical injury, illness, loss of sleep, or a substantial disruption" in her daily routine. *See Parkway Co.*, 901 S.W.2d at 445 (holding that plaintiffs' concern over flooding of their home did not entitle them to mental anguish damages when they failed to prove that their distress involved more than worry, anxiety, vexation, and anger); *Jabri*, 145 S.W.3d at 669 (holding that plaintiff was not entitled to mental anguish damages when he did not testify that

23

any of appellants' misrepresentations caused him a high degree of mental pain and distress that was more than mere worry or anxiety or any form of mental anguish that caused him "physical injury, illness, loss of sleep, or a substantial disruption in his daily routine").

Zepeda presented no evidence of mental anguish. Thus, the trial court erred in awarding Zepeda mental anguish damages and in trebling those damages.

We sustain South Coast's second and third issues.

### Notice Under the DTPA

In its fourth issue, South Coast argues that Zepeda failed to adequately plead and prove notice as required by DTPA section 17.50(b)(1), and, thus, the trial court erred in failing to grant South Coast's request for abatement. South Coast argues that the remedy for this alleged error is reversal of the judgment with respect to all matters related to Zepeda's DTPA claim. In its fifth issue, South Coast argued that because the DTPA claim should be reversed due to Zepeda's failure to give the statutorily required notice, the award of attorney's fees should also be reversed.

DTPA section 17.505(a) requires that, as a prerequisite to filing a suit that seeks damages under section 17.50(b)(1) against any person,

> a consumer shall give written notice to the person at least 60 days before filing the suit advising the person in reasonable detail of the consumer's specific complaint and the amount of economic damages, damages for mental anguish, and expenses, including attorney's fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant.

24

TEX. BUS. & COM. CODE ANN. § 17.505(a) (Vernon 2008). If a plaintiff files an action for damages under the DTPA without first giving the required notice and a defendant timely requests an abatement, the trial court must abate the proceedings if it determines that notice was not provided as required. *See id.* § 17.505(c)–(e). Section 17.505 further provides that "[i]f the giving of 60 days' written notice is rendered impracticable by reason of the necessity of filing suit in order to prevent the expiration of the statute of limitations or if the consumer's claim is asserted by way of counterclaim, the notice provided for in Subsection (a) of this section is not required . . . ."[5] *Id.* § 17.505(b).

However, a defendant may waive his objection to a lack of notice. *K.J. v. USA Water Polo, Inc.*, 383 S.W.3d 593, 603 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). Generally, waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Id.* (citing *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (per curiam)). "A defendant who fails to make a timely request for abatement must be considered to have waived his objection to the lack of notice." *Hines v. Hash*, 843 S.W.2d 464, 469 (Tex. 1992) (discussing previous version of DTPA notice provision).

---

[5] Section 17.505(b) goes on to provide that, even when 60 days' written notice is not required, a defendant in a DTPA case can still provide, as a defense to the consumer's claims, a tender of the amount of economic damages, mental anguish damages, and expenses, including attorney's fees, within 60 days after service of the suit or counterclaim. TEX. BUS. & COM. CODE ANN. § 17.505(b), 17.506(d) (Vernon 2008).

Here, South Coast asked for abatement in its April 2010 original answer, alleging that Zepeda did not give proper notice as required by section 17.505(c). Zepeda responded by arguing that her suit was filed in response to South Coast's suit filed in small claims court and that she provided South Coast with adequate notice. In her response, Zepeda stated that she sent South Coast a letter on November 17, 2009, detailing the problems she had observed with her roof and providing pictures. She alleged that Kyle responded on behalf of South Coast, stating, "We will see you in court with all attorney's fees, court costs, and the interest on the unpaid funds." South Coast then filed a suit against her in small claims court, and she responded by filing the underlying suit in the trial court.

Neither South Coast nor Kyle raised the issue of notice again after Zepeda filed her response to South Coast's allegation that it was entitled to abatement under section 17.505. Darby Kyle filed his general denial on August 2, 2010, and he failed to raise the issue of notice. In August 2010, the parties agreed to a docket control order setting deadlines of completing mediation and discovery, again without any reference to the issue of notice or abatement under section 17.505.

We conclude that South Coast's failure to make an argument that it was entitled to abatement under section 17.505 following Zepeda's response to the request for abatement contained in the original answer was intentional conduct inconsistent with claiming any right to abatement under section 17.505. *See*

26

*Jernigan*, 111 S.W.3d at 156; *USA Water Polo, Inc.*, 383 S.W.3d at 603. Likewise, Darby Kyle's complete failure to request an abatement waived of any right to abatement under section 17.505. *See Hines*, 843 S.W.2d at 469.

South Coast also argues that the notice provision of section 17.505 is jurisdictional. For support, it cites *Blumenthal v. Ameritex Computer Corp.*, 646 S.W.2d 283 (Tex. App.—Dallas 1983, no writ), *superseded by statute as recognized in Hines*, 843 S.W.2d 464 (Tex. 1992), and *Hines*. However, *Blumenthal* addressed the 1977 version of the DTPA, in which 30 days' notice was a requirement for seeking treble damages—a provision that is no longer applicable. *See* 646 S.W.2d at 286–87. Furthermore, the *Blumenthal* court did not hold that failure to comply with the notice provision deprived the trial court of jurisdiction; rather, it stated that the "mandatory language of the statute" requiring 30 days' notice before a consumer can seek treble damages required the court to reverse the portion of the judgment awarding treble damages. *Id.* at 287. The court affirmed the award of actual damages. *Id.* at 288.

Likewise, in *Hines*, the Texas Supreme Court discussed the 1979 version of the DTPA, which required a consumer to give 30 days' notice but omitted the previous language limiting damages when a consumer failed to provide notice, and it observed that, "[u]nlike the 1977 provision, the 1979 version places the burden on [the] plaintiff to plead that he gave notice." 843 S.W.2d at 467. It also held

27

that a "defendant must raise a timely objection to [the] plaintiff's failure to plead" and that the "[d]efendant must object to [the] plaintiff's failure to meet his burden of proof [establishing compliance with the notice provision] in order to preserve error." *Id.* Just as in *Blumenthal*, the court in *Hines* did not hold that failure to comply with the notice provision deprived the trial court of jurisdiction. *Id.* at 467–69.

Rather, the *Hines* court held that "if a plaintiff files an action for damages under the DTPA without first giving the required notice, and a defendant timely requests an abatement, the trial court must abate the proceedings for 60 days." *Id.* at 469. It further stated, "To be timely, the request for an abatement must be made while the purpose of notice—settlement and avoidance of litigation expense— remains viable." *Id.* The supreme court specified:

> Thus, defendant must request an abatement with the filing of an answer or very soon thereafter. If the trial court determines that plaintiff has failed to give notice as required by the statute, the action must be abated. Defendant is entitled, but not obliged, to seek review of a denial of abatement by mandamus. Defendant may wait until appeal from the final judgment to seek review of a denial of abatement, but the trial court's error must be shown to have been harmful to obtain reversal. Ordinarily, this would require a showing that defendant was unable to limit his damages under the statute by tendering a settlement offer.

*Id.*

Thus, we conclude that, even if South Coast had pursued an explicit determination by the trial court that Zepeda failed to give the required notice—

28

which it did not—South Coast's claim on appeal would fail because South Coast has not shown harm based on lack of opportunity to tender a settlement offer. The evidence established that, rather than demonstrating any interest in settlement, Kyle, acting on behalf of South Coast, explicitly told Zepeda, in response to her pre-suit letter outlining the roof's defects, that it would "see [her] in court" and initiated legal proceedings by filing a suit in small claims court. *See id.*

We hold that South Coast waived its right to abatement. Because the alleged lack of notice does not require reversal of Zepeda's judgment on the DTPA claim, we likewise conclude that South Coast's fifth issue—arguing that attorney's fees are improper where the DTPA claim must be reversed—is unmeritorious.

We overrule South Coast's fourth and fifth issues.

## Conclusion

We reverse the portion of the trial court's judgment granting Zepeda $20,000 for mental anguish damages and $60,000 for treble mental anguish damages, and we render judgment that Zepeda receive nothing for mental anguish damages. We affirm the remainder of the trial court's judgment against Darby Kyle and South Coast.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Massengale, and Brown.